## C. H. WARE v. THE STATE.

No. 12927. Delivered February 26, 1930.
Reported in 25 S. W. (2d) 613.

The opinion states the case.

*Leonard Brown* and *John H. Ragsdale,* both of San Antonio, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, aggravated assault; penalty, a fine of $500.00.

Appellant was married to prosecuting witness in August, 1928, and the assault in question is alleged to have occurred the 4th day of January, 1929. Without detailing the incriminating facts shown

in the record, it is sufficient to say that the testimony of appellant's wife and his mother-in-law showed an unprovoked assault on prosecuting witness by appellant. In view, however, of the penalty assessed, of the highly improper and prejudicial matters appearing in the statement of facts and of the showing made by appellant on motion for a new trial as to newly discovered evidence, we are not willing to permit this conviction to stand.

The testimony showed the parties separated on January 4th, 1929, as man and wife on account of the alleged conduct of appellant. On the 10th, six days later, however, prosecuting witness wrote to appellant in part as follows:

"My dearest husband

"I will write you a few lines to-day. . . . well I don't know how long I will be here not long I don't think. . . .

"I will close for this time ans. if you want to, be glad to hear from you any time.

"Love and kisses

"from your true Wife."

Prosecuting witness testified at the time of the assault: "He raised the axe to hit me and the lady grabbed the axe." This lady was called by the State to corroborate this testimony and she testified: "He did not try to hit his wife with the axe, but as he had it in his hand, I tried to take it away from him, being that they were mad, that is the reason I was trying to take it away from him." The effect of the wife's testimony was that he failed to furnish enough to eat and bawled her out about her grocery bill. The State's witness, Mrs. Gonzales, kept a store nearby. She testified: "Mrs. Ware came and got anything she wanted there; she had credit there. Mr. Ware never did fuss to me about what she bought. He came in always and paid me, except the last bill." A policeman was called and arrived there immediately after the assault. The wife had testified that he had choked her and that she had scars on her neck and bruises as a result of said assault. This policeman observing her immediately thereafter, testified: "There was only a little scratch on her neck and showed where he had held her wrist. It seemed like all of them had been drinking." Appellant testified: "I lived with her five or six months before I married her. I bought her clothes. I bought her two or three pairs of shoes and bought her hose and dresses. I had between $50 and $75 of dental work done for her here at the Union. I supported her in a manner in which my finances warranted." He further testified that she was

fighting and trying to strike him with a broom stick and that in trying to hold her the scratch on her neck observed by the officer occurred. He denied in toto her testimony as to any assault upon her. He testified further that he used every effort to prevent her from leaving him and to come back to him after she had left. The following are two of the many prejudicial statements made by the wife on her examination: "As to whether he tried time and time again to keep me from going home to my mother, certainly. Do you know why that was done? It was just to mistreat me again. . . . As to whether I packed up a lot of my stuff and left it down there at his brothers,—why? Because it would have been soaked for a gallon of whisky." She further testified: "This is my handwriting, I wrote that letter to him. I told him I would go back to him if he would build me a home and put it in my name, where he wouldn't touch it."

The record shows that complaint and information was filed against appellant on January 8, 1929, and that no warrant of arrest was ever issued or served until the 9th day of April, 1929; that his arrest in the instant case occurred during the trial of an abandonment charge; that he immediately went to trial in this case, the verdict of guilty being returned on the same day of his arrest.

Appellant alleges in his motion for new trial that he had no opportunity to make a complete investigation of the facts surrounding the offense; that after his trial and conviction he learned that one of his neighbors, Naives Ramirez, was a witness of the transaction in which the wife testified he assaulted her and for which he was convicted. The affidavit of Ramirez is attached to the motion for new trial. The substance of this is that on the morning of the alleged assault he saw appellant go to the door of his home and heard his wife arguing and cursing, saying: "Where in the hell have you been you g— d— s— of a b—?" That attracted by the language and tone of the voice he went across the street and walked up to about four feet from an open window, where he could see appellant and his wife, who were then in a room where the assault is alleged to have happened. Without tediously detailing his lengthy statement, suffice it to say that it completely corroborated appellant's testimony and if believed entitled him to an acquittal. Considering the unsatisfactory condition of this record and that every disinterested party corroborates in some part appellant's theory of this matter and that his conviction rests alone upon the testimony of his mother-in-law and wife, whose hostility to him is plainly manifest, we are of

the opinion that the trial court erred in not granting appellant a new trial on account of this newly discovered evidence. Coming from the source it did, we are not warranted in saying it would not have affected the result of the trial. The affidavit states that this witness had never told the appellant. The motion avers under oath that neither appellant nor his counsel knew of such testimony and the peculiar circumstances of the case already recited render it very probable that they could not have known of same prior to the trial. It has been said:

"Sometimes justice and fairness require a new trial that defendant may have the benefit of the additional testimony although it is not strictly or technically newly discovered evidence." Branch's P. C., Sec. 192, citing: Dunham v. State, 3 Tex. Crim. App. 469; Bullock v. State, 12 Tex. Crim. App. 50; Roy v. State, 24 Tex. Crim. App. 377; Potts v. State, 26 Tex. Crim. App. 663; Ford v. State, 41 Tex. Crim. Rep. 8; Lindsey v. State, 50 Tex. Crim. Rep. 437; Johnson v. State, 51 Tex. Crim. Rep. 605; Weaver v. State, 52 Tex. Crim. Rep. 11; Prater v. State, 60 Tex. Crim. Rep. 88; Spencer v. State, 153 S. W. 858; Block v. State, 160 S. W. 722.

Judgment reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.