### C. B. Spencer v. State.

#### No. 2079.   Decided February 12, 1913.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence sustained the conviction, there was no error.

**2.—Same—Newly Discovered Evidence—Cumulative Evidence.**

While it is public policy to forbid new trials for the purpose of admitting cumulative testimony, yet, where newly discovered testimony is of such cogency and force that it may properly show that an innocent man has been convicted, a new trial should be granted.

**3.—Same—Case Stated—New Trial Should be Granted, When.**

Where defendant was convicted of manslaughter, and the brother of the defendant testified during the trial that he and not his brother fired the shot at the deceased, and after conviction, it was shown by affidavit of a disinterested witness that this testimony was true, but had been wilfully withheld from the knowledge of the defendant and his counsel until after trial, a new trial should have been granted, although such newly discovered evidence was mainly cumulative.

**4.—Same—Charge of Court—Independent Impulse.**

Where there was no evidence that defendant and his brother were acting together at the time of the homicide, upon a previous understanding, and there was evidence that defendant's brother killed deceased, the court's charge should not have required that he must have acted upon an independent impulse.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Williams & Williams* and *Nat Llewellyn*, for appellant.—On question of newly discovered evidence: Gray v. State, 144 S. W. Rep., 283; Fisher v. State, 30 Texas Crim. App., 502; Riojas v. State, 36 Texas Crim. Rep., 182; Weaver v. State, 52 Texas Crim. Rep., 11; Clark v. State, 51 id, 519; French v. State, 47 id, 571; Brock v. State, 44 id, 335; Moore v. Forsythe, 49 Texas, 171.

*C. E. Lane*, Assistant Attorney-General, and *Frank Oltorf*, for the State.—On question of newly discovered evidence: Templeton v. State, 5 Texas Crim. App., 398; Burns v. State, 12 id, 369; Pelly v. Ry. Co., 78 S. W. Rep., 542.

HARPER, JUDGE.—Appellant when tried was convicted of manslaughter, and his punishment assessed at three years confinement in the penitentiary.

The State's evidence would support the verdict, and we do not deem it necessary to state it in detail, but only such of it as will explain the opinion of the court.

On the trial it was proven that deceased and appellant had been friends, but on the morning of the difficulty deceased went into the store of appellant to transact some business. That a dispute arose and deceased called appellant a son-of-a-bitch. It is not clear which one committed the first overt act in the actual difficulty that occurred, but it is apparent that they "clinched," and a scuffle ensued. A State's witness says that during the difficulty appellant pulled a pistol and shot deceased, and there are circumstances in the case which support this theory.

Appellant testified, admitting the difficulty, but says he had no pistol and did not do the shooting, and did not know who did do it. That deceased had an arm around his neck, and he was so situated he could not and did not see the shooting. That when the pistol fired deceased fell and dragged him down with him.

John Spencer, a brother of appellant, who was a clerk in the store, tells of the difficulty, and says that deceased had his brother (appellant) around the neck with his left arm, and run his right hand in his pocket, saying at the time, "I will cut your God damn guts out," and he (John Spencer) then fired the shot that killed the deceased. If John Spencer in fact shot the deceased, there is no evidence that appellant, C. B. Spencer, had any knowledge of such intention on John Spencer's part.

The jury find that C. B. Spencer, appellant, fired the shot, and not John Spencer, and, as we said before, the evidence had on the trial would support their so finding. The amended motion for a new trial together with the affidavits attached and evidence heard on the motion for new trial, shows that after the trial the foreman of the jury met a friend who informed him that they had convicted the wrong man, and in the conversation disclosed his reasons for so be-

lieving, stating his source of information. The foreman of the jury went promptly to appellant's counsel and told him what he had heard. Upon investigation it was discovered that there was a man who claimed he had seen the difficulty, and who would testify that John Spencer and not appellant was the person who fired the shot. This witness left Marlin shortly after the difficulty and is now residing in Missouri. Appellant's counsel went to Missouri and saw this witness, Mr. Floyd P. Smith, and attaches the affidavit of Mr. Smith, which reads as follows.

"In the spring of 1908 I went to Marlin, Texas, to live for my health and remained there until July, 1909. During all of that time I was in the employ of Curtis & Co. at their store in Marlin. I was working there at the time a man named Thomas was shot and killed in the store of C. B. Spencer just across the street from the store I worked in. I saw John Spencer shoot Mr. Thomas. C. B. Spencer did not shoot Mr. Thomas. There was only one shot fired and I saw John Spencer fire that. The circumstances were as follows so far as I saw: It was about the noon hour and I had started out the north front door of Curtis & Co. to go get a sack of tobacco and just as I got on the side walk (being on Commerce street) I heard a scuffling in the front part of Spencer's store across the street. I looked over there and saw Mr. Thomas scuffling with some one. This party Mr. Thomas was scuffling with was backing before Mr. Thomas caught hold of him, and just as Mr. Thomas caught him he backed behind the edge of the door facing from me so that I could only see Mr. Thomas and could not see the person he had hold of, as they backed against the wall I heard a trace chain fall or something that sounded like it, and just at this time while these two men were scuffling there by the door facing I saw John Spencer come up the south isle of the Spencer store and shoot Mr. Thomas in the side or back with a pistol, and just then I saw C. B. Spencer come out from behind the door facing so that I then knew and now state as a fact that it was C. B. Spencer that Mr. Thomas was scuffling with. Mr. C. B. Spencer came instantly into my view after the shot was fired and he did not then have any pistol in either hand, nor did I see him with one at any time. John Spencer was standing directly in front of the door and about four or five feet back from it at the corner of the show case by the south isle when he shot Mr. Thomas. When the shot was fired Thomas dropped to his knees or entirely to the floor—he fell. But I cannot definitely say whether it was just to his knees, his all-fours or entirely down, as I turned abruptly and went immediately back in the Curtis & Co. store. As I went in I met Gilbert O. Burgess coming to the front door and he turned and went back with me. We then looked through the glass door and I saw Mr. Thomas, he was then standing up again and seemed to be leaning on C. B. Spencer or Mr. C. B. Spencer was trying to hold him up, but he gradually sank to the floor. I knew both of the Spencers well by sight

and came in daily contact with them. I cannot be mistaken when I say it was John Spencer and not C. B. Spencer that shot Mr. Thomas. John Spencer was standing in front of the door back only a few feet from it and in plain view of me when he fired the shot, he was about seventy feet from me. I have never told anyone what I saw or knew about this matter except Mr. Gilbert Burgess and Mr. D. W. Stallworth of Marlin, nor. have I told or intimated to anyone else that I knew anything at all about the killing of Mr. Thomas. I have never told Mr. C. B. Spencer or any of his attorneys or family or anyone else about my knowing anything of this matter and he had no reason for suspecting that I knew of it that I know or can think of.

"My reason for not wanting anyone to know that I knew the facts I have stated above and on the opposite side of this sheet of paper is—the condition of my health at that time—I had gone to Texas and to Marlin for lung trouble and my doctor, Doctor Allen of Marlin had told me that I had a cavity in each lung and had advised me against any excitement whatever and I very much feared any excitement whatever; what did happen and my seeing it put me to bed for several hours. I regarded my condition there at that time as serious. Later I went to Dr. Torbett of Marlin and in July of that year he advised me to go to San Marcos, Texas, on account of my lung trouble. I left Marlin in July, 1909, and have never been back since. I went from there to San Marcos, Texas, where I remained eleven months and then came direct to my old home at Laddonia, Missouri, where I now live. My health is now much improved and I believe I have almost if not entirely recovered from my lung trouble, but otherwise my health is not very good at this particular time. If this case is ever tried again in the trial court it is my intention to be present and give my testimony in this case and I would have given both sides the benefit of what I know before this, but for the reasons above stated. I am thirty-three years old, have been married fourteen years and have three children. I have no special interest in this matter and only a speaking acquaintance with C. B. Spencer. I have never been convicted of or charged with a felony or any other offense, and no fact exists that would render me incompetent as a witness. I am well known by the business people of Marlin, Texas. I am a member of the Christian church. I have never seen anyone from Marlin since I left there except Mr. Gilbert Burgess. As I recollect it this shooting occurred in February, 1909.

"Signed and sworn to this June 19th, 1912.

"Floyd P. Smith.

"Signed and sworn to before me by Floyd P. Smith, who is personally known to me, this June 19th, 1912.

"(Seal)                                        W. H. Logan,

"Notary Public Audrain County, Missouri.

"My commission expires June 24, 1914."

By the testimony of a number of witnesses Mr. Smith is shown to be a credible man whose general reputation is good for truth and veracity.

Appellant testifies as to the diligence used to discover all persons who knew anything about the difficulty, at the time and before the trial of his case, and we think it such that any ordinary person would use, and he cannot be held not to have used proper diligence in discovering sooner that Mr. Smith was a witness in his case.

However, the State contends that even if appellant is not lacking in diligence, the testimony is but cumulative of that of John Spencer, and for this reason the court did not err in refusing to grant a new trial. This is the general rule of law as has frequently been announced by this court. The appellant contends that it is not "cumulative only," and enters into a lengthy discussion of what is "only cumulative testimony." The distinction he attempts, and the decisions he cites we do not deem it necessary to notice under the disposition we make of this case.

There can be no question under the evidence in this case, that if John Spencer in fact fired the shot appellant is not guilty of the homicide either as a principal, accomplice or accessory. In other words, if the shot was fired by John Spencer, an innocent man has been sentenced to the penitentiary. The evidence, without the testimony of Floyd P. Smith, renders it extremely doubtful as to which one, appellant or John Spencer, did the shooting, and while the testimony would justify the jury in finding as they did on this contested issue, it would also have supported a finding that John Spencer did the shooting. The record being in this condition, can any man say what would have been their finding if Mr. Smith, a reputable citizen, had supported the testimony of John Spencer by testifying that he saw John Spencer fire the shot? We all know how prone human nature, men who compose the juries of the country as well as the balance of mankind, is to fail to give to the evidence of a brother of one on trial charged with a penitentiary offense that credence that would be given to his testimony under different circumstances. The testimony of a relative, of one on trial, is seldom given that weight that is given to one wholly disinterested, even though they may be men of equal standing and reputation in the community. We all feel and believe that the ties of blood, of brotherhood, will have its weight with a witness, and the law recognizes this by admitting evidence of that fact to show interest, bias, etc. As said in some of the opinions, the reason for the rule forbidding a new trial for the purpose of admitting cumulative testimony is that public policy, looking to the finality of trials, requires that a defendant be held to diligence in preparing their cases for trial, but this policy which seeks to limit continued litigation should never be applied where the newly discovered testimony may be of that cogency and force where it might probably show that an innocent man may probably be caused to

suffer for a crime he did not commit. Courts are organized, and the object of the law is that the true facts may be arrived at and justice administered, and where the evidence is about upon an equipoise as to whether a man committed an offense or not, if there is really newly discovered testimony coming from a credible source, this rule will be held in subordination to the great end to be obtained—that is, meting out justice to each individual citizen. As illustrative of this rule, two men may be charged with crime, and under such circumstances neither can be a witness for the other, but if one is first tried and convicted, and then the other tried and acquitted, our courts have always held that a new trial will be granted if in a motion for a new trial he swears that the testimony of this witness is material to his defense, and the witness attaches his affidavit swearing to facts that are material to the defense, even though it should be held to be in some sense cumulative. The reason being that, no amount of diligence could sooner have obtained this testimony. And in this case it is disclosed that the witness wilfully withheld from the knowledge of this defendant the facts he would testify to until discovered by accident by the foreman of the jury who had convicted him. While the testimony of Mr. Smith, as shown by the affidavit, may be said to be cumulative of the testimony of John Spencer, yet in it are stated some other facts and circumstances not testified to by John Spencer, but corroborative of the theory of the appellant in this case—that he was attacked by deceased and retreated. Looking at the relative size and strength of the parties as shown by the record, Thomas, deceased, being a powerful man, weighing from 190 to 200 pounds, much heavier and stronger than appellant, as the court submitted the issue of self-defense as to appellant, this testimony might have great weight. Viewing the record as a whole, we do not think this alleged newly discovered testimony can be said to be only cumulative in the legal sense of those words, but if it should be so held, then this case presents one of those rare instances where the evidence adduced on the trial renders it questionable as to whether appellant is guilty of any wrongdoing, and while we would not feel authorized to disturb the verdict on account of this conflict in the testimony, yet a new trial should be granted to enable appellant to place before a jury of his countrymen this additional testimony, coming, as it does, from a credible source, before being branded as a felon. While the interests of society require that those who violate the law shall be punished and restrained, yet the State desires no innocent man to suffer, and a greater crime is committed against society when a person, guilty of no offense, is wrongfully made to wear prison stripes, than when one guilty is permitted to escape. Our law is that so long as there is a reasonable doubt of one's guilt, he is entitled to that doubt, and this evidence of Mr. Smith can but create a doubt in the mind of one that if it had been before the jury in this case, a different result might have been obtained.

There are other questions presented in the record, but we deem it unnecessary to discuss them, except to add that as there was no evidence that appellant and John Spencer were acting together, carrying out a common purpose in accordance with a previous understanding, the court should not have burdened that part of his charge presenting the theory as to whether or not John Spencer killed deceased, with the requirement that the jury must find that ''he acted upon an independent impulse of his own.'' On another trial, if the evidence is the same, those words should be omitted from that paragraph of the charge. While under the evidence this perhaps would not present reversible error, but on account of the matters above pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*