Albert Jack **FLETCHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 41678.

Court of Criminal Appeals of Texas.

Dec. 18, 1968.

Rehearing Denied March 12, 1969.

**850**

Roye & Weatherly, by Gerald Weatherly, Graham, Pete Perez, Fort Worth, for appellant.

Frank Coffey, Dist. Atty., Clayton Evans and John E. McLean, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is possession of a dangerous drug; the punishment, two years in the county jail.

The complaint and information allege that appellant possessed "a dangerous drug, to wit: a barbituric acid derivative."

Initially, appellant urges that such instruments failed to sufficiently describe the dangerous drug allegedly possessed so as to inform him of the act upon which his conviction was sought.

Article 726d, Vernon's Ann.P.C., provides in part:

"Definitions

"Sec. 2. For the purposes of this Act: (a) The term 'dangerous drug' means any drug unsafe for self-medication, except preparations of drugs defined in Subdivisions (a) (6), (a) (7), (a) (9), and (a) (10) hereof, designed for the purpose of feeding or treating animals (other than man) or poultry, and so labeled, and includes the following:

"(1) any barbiturate or other hypnotic drug. 'Barbiturate' includes malonylurea derivatives and barbituric acid derivatives. * * *"

We believe appellant's contention to be answered by Cortez v. State, 165 Tex.Cr. R. 320, 306 S.W.2d 713, a case decided under Article 726c, V.A.P.C., a forerunner of Article 726d, supra. There this Court said:

"The term 'barbiturate' is defined in Art. 726c, V.A.P.C., to mean 'the salts and derivatives of barbituric acid, also known as malonyl urea, having hypnotic or somnifacient action, and compounds, preparations and mixtures thereof.'

"The indictment alleging the unlawful possession of barbiturates, in view of this

definition, was sufficient without further allegation as to the type of barbiturate possessed."

In McKenzie v. State, Tex.Cr.App., 383 S.W.2d 177, 180, a barbituric acid derivative was held to be a dangerous drug under the provisions of Article 726d, supra.

Observe that Parker v. State, Tex.Cr. App., 384 S.W.2d 712 and Brown v. State, Tex.Cr.App., 391 S.W.2d 425, were affirmed under Article 726d, supra, and the information in those cases alleged either possession "of a dangerous drug, to wit: barbiturate" or "barbiturates."

Appellant's reliance upon Hart v. State, Tex.Cr.App., 396 S.W.2d 873; Horton v. State, 123 Tex.Cr.R. 237, 58 S.W.2d 833; Baker v. State, 123 Tex.Cr.R. 209, 58 S.W. 2d 534; Baker v. State, 123 Tex.Cr.R. 212, 58 S.W.2d 535, is misplaced. In those cases the indictment or information merely alleged possession "of a dangerous drug" or possession "of a narcotic drug" without more and were held insufficient to inform the accused of the charge upon which he was called to defend.

Nor are we impressed with appellant's argument that since the evidence subsequently showed the availability of a more detailed description of the barbituric acid derivative his motion to quash should have been granted.

We hold that the trial court did not err in overruling appellant's motion to quash.

Appellant's ground of error #1 is overruled.

In ground of error #2 appellant contends the court erred in refusing to allow one of his attorneys to testify before the jury at the penalty stage of the proceedings, thus depriving him of showing the bias, ill feeling, motive and animus of at least two reputation witnesses testifying against him. A bill of exception was perfected showing that if permitted, the attorney would have testified that he had pending in federal district court an injunction suit, on behalf of appellant, against the City of Fort Worth

and its Police Chief seeking to restrain the Fort Worth Police Department from harassing the appellant and making unlawful arrests; that in said "lawsuit" the acts of two of the State's witnesses, Officers Geeslin and Church, as to appellant's reputation as a law abiding citizen are set out.

It is observed that appellant testified in his own behalf on the issue of guilt or innocence. On cross-examination after he was asked if Officer Church, who had previously testified, had any reason to testify against him, the following transpired:

"A. (The witness) Yes sir, he certainly does have reason to.

"Q. He does have?

"A. Yes.

"Q. All right, they are prejudiced against you here, aren't they?

"A. Well, I wouldn't say they were prejudiced. That is not the correct word, I don't believe.

"Q. Why does he have a reason to testify against you?

"A. I have civil rights violations filed on almost all of these gentlemen, in one place or another.

"Q. You have civil rights violations filed?

"A. Yes sir.

"Q. Why have you filed civil rights violations?

"A. For arrest without cause."

The appellant did not subsequently testify at the penalty stage of the proceedings nor were Officers Church or Geeslin, two of the 12 State's reputation witnesses, cross examined as to any ill feeling or animus toward appellant.

While we are in full accord with the appellant that great latitude is allowed an accused in showing any fact which would tend to establish ill feeling, bias, motive, and animus upon the part of any witness testi-

fying against him and that he is not restricted to any one method of so showing, we cannot agree that the best evidence of the pendency of a lawsuit and the allegations in the pleadings therein as to certain individuals is the testimony of an attorney involved. The court records are the best evidence, particularly where as here the lawsuit, supposedly filed in 1965, had been dismissed by the court and reinstated on appeal. The court did not err in refusing to permit appellant's counsel to so testify, over the State's objection, under the circumstances here presented. Preston v. State, 40 Tex.Cr.R. 72, 48 S.W. 581; Rhodes v. State, 135 Tex.Cr.R. 422, 120 S.W.2d 1070 and cases therein cited; Underhill's Criminal Evidence, 4th ed., § 102, p. 128; Texas Law of Evidence, McCormick and Ray, § 1576, p. 432. See also First National Bank of Eagle Lake v. Robinson, Tex.Civ.App., 124 S.W. 177; Aetna Club v. State, Civ.App., 193 S.W. 1106.

■ We reject appellant's claim that Article 37.07, § 2(b), as amended in 1967 is unconstitutional insofar as it permits evidence of a defendant's reputation to be introduced at the hearing on punishment or penalty stage of the proceedings. Smith v. State, Tex.Cr.App., 414 S.W.2d 659; Broadway v. State, Tex.Cr.App., 418 S.W.2d 679; Wilson v. State, 434 S.W.2d 873; Ojeda v. State, Tex.Cr.App., 428 S.W.2d 811; Ramos v. State, Tex.Cr.App., 419 S.W.2d 359; Ashworth v. State, Tex.Cr.App., 418 S.W.2d 668. Nor do we agree that the punishment assessed by the jury, being within the limits prescribed by the Legislature, constitutes cruel and unusual punishment in violation of the Eighth Amendment, United States Constitution. Grounds of error #3 and #4 are overruled.

In ground of error #5 appellant contends the search of his person and the seizure of "the pills" were unreasonable and violative of the Fourth and Fourteenth Amendments of the Federal Constitution.

■ Appellant's motion to suppress the results of the search was overruled some six months prior to trial. If testimony was offered in connection with such motion it does not appear in the record before us. The court subsequently refused to entertain another motion to suppress, orally urged, on the day of the trial. At the trial no objection was offered to the testimony of the Fort Worth police officers that on January 13, 1967, and in company with Liquor Control Board officers they had gone to a beer joint or lounge at 2916 East Belknap in the City of Fort Worth and had there arrested the appellant; that subsequently a search of the appellant in the Shakedown Cage at the police station by the Turnkey revealed the "pills" which are the subject of this prosecution. Appellant elicited from Officer M. R. Church that he and the other officers had gone to the beer joint in question because they "had information that there was a pill party, and some ex-convicts and police characters * * * out at this address." We learn from appellant's own testimony that his arrest was for "drunk." Under these circumstances we perceive no error in the admission of the results of the search into evidence. Ground of error #5 is overruled.

■ We find no merit in appellant's claim that the proper chain of custody was not established prior to the introduction of State's Exhibits Nos. 1 and 2 (an envelope and the barbiturates in question). This claim is based upon the testimony of the chemist that after bringing the exhibits to the courtroom he gave them to the district attorney—"To Mr. Clayton." Appellant contends there is not a sufficient showing of who "Mr. Clayton" was. Mr. Clayton Evans, Assistant District Attorney, who participated in the prosecution of the case, testified he had received such exhibits from the chemist in the courtroom and that the chemist had nodded in his direction when he referred to "Mr. Clayton." Ground of error #6 is overruled.

■ In ground of error #7 appellant contends the court materially erred to his prejudice in overruling his objections to the

prosecutor's repeatedly eliciting evidence about so called "known users" who were arrested with appellant and their past arrest records. We do find the record to support a claim of "repeatedly eliciting." In instances where such questions were asked by the State, it was only after the subject matter had been first inquired into by the appellant.

Finding no reversible error, the judgment is affirmed.