Feryl John GRANGER, Appellant,

v.

The STATE of Texas, Appellee.

No. 316–83.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Logene L. Foster, Sugar Land (court appointed), for appellant.

William A. Meitzen, Dist. Atty., Richmond, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S AND STATE'S PETITION FOR DISCRETIONARY REVIEW

THOMAS G. DAVIS, Judge.

Trial was before the jury for the murder of Steve Anderson. After finding appellant guilty, the jury assessed punishment at life. On appeal the Corpus Christi Court of Appeals (13th District) reversed the conviction. See *Granger v. State*, 653 S.W.2d 868 (Tex.App.—Corpus Christi 1983). We granted the State's petition for discretionary review to examine the Court of Appeals' holding that the accomplice witness' testimony given at appellant's former trial was improperly admitted at his second trial. The Court of Appeals held that although the witness was "unavailable" at the second trial, reading her former testimony into the record was improper because appellant was denied effective cross-examination of the witness at the time that she gave the testimony at the first trial. According to the court, the cross-examination was ineffective because the State failed to disclose to appellant at his first trial that it had an "understanding" with the witness to reward her for her testimony. We also granted appellant's petition for discretionary review to examine the Court of Appeals' holding that the nonaccomplice testimony sufficiently corroborated the accomplice witness' testimony, and that such evidence was sufficient to sustain the conviction.

The record reflects that on January 3, 1978, the bound and gagged bodies of Steve Anderson and his wife Marjorie Anderson were found in their home in Sugarland, by Marjorie Anderson's daughter Joan Maresh. The Andersons died from multiple gunshot wounds to the head. Mary Lou Anderson, Steve Anderson's daughter, was originally indicted along with appellant for the capital murder of the Andersons. Mary Lou Anderson was convicted of the capital murder of Steve Anderson and assessed punishment at death. Subsequently she testified for the State at appellant's capital murder trial and he was

also convicted and assessed death. Within ten days after testifying against appellant, Anderson was granted a new trial and pled guilty to murder, and was assessed fifty years by the court. In *Granger v. State*, 605 S.W.2d 602 (Tex.Cr.App.1980), we reversed appellant's capital murder conviction because the nonaccomplice testimony failed to sufficiently corroborate the element of remuneration which was necessary to sustain the conviction. We noted that appellant could be retried for the lesser included offense of murder.

Appellant was reindicted for murder. At his second trial, the State called Mary Lou Anderson as a witness, but she refused to testify. Although the State offered her immunity with the court's consent, and the court ordered her to testify, she steadfastly refused to testify and was held in contempt. Over objection, the State was allowed to read her testimony given at appellant's capital murder trial.

On appeal before the Court of Appeals, appellant challenged the use of this former testimony. The Court of Appeals held that the testimony of a witness given at a former trial of the defendant for the same offense is admissible upon retrial if the witness is "unavailable" and if the defendant had the opportunity to effectively cross-examine the witness at the prior proceeding.

After holding that the witness Anderson was in effect "unavailable" because of her refusal to testify, the court examined the adequacy of the cross-examination of Anderson at the first trial and concluded that the witness was not effectively cross-examined and thus her prior testimony was erroneously admitted into evidence. The ineffective cross-examination was due to the State's failure to disclose to appellant at his first trial that Anderson's testimony was induced by an arrangement with the State to reduce her punishment of death to a term of years. The court held that the nondisclosure contravened the holdings of *Burkhalter v. State*, 493 S.W.2d 214 (Tex.

Cr.App.1973) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972):

"By whatever description, 'deal,' 'arrangement,' 'or tacit understanding,' the fact is that the State agreed to reward Mary Lou Anderson for her testimony by reducing her death sentence to a term of years. This was known to the presiding judge, the prosecutor, [Anderson's] defense attorney and Anderson. Yet Anderson was allowed to mislead the jury by denying that this played any part in her motivation to testify against appellant ...

"Although cross-examined about her motives, Anderson did not equivocate. As such, counsel for appellant was unable to develop the extent of any deal between the State and Anderson. Furthermore, in allowing Anderson to testify that no deal or expectation existed, the State recklessly mislead the jury about Anderson's motives and prevented an effective cross-examination of Anderson.

"This situation brings the case within the rules announced in *Burkhalter*, [supra, 493 S.W.2d 214] and *Giglio* [supra, 92 S.Ct. 763]. *As such we find that the non-disclosure of the arrangements made between the State and the witness Anderson deprived appellant of his right to effective cross-examination.*" 653 S.W.2d at 876 (emphasis supplied).

The court further held that such error was not cured in the second trial by testimony that informed the jury of the "understanding" between Anderson and the State because such disclosure could not remedy the ineffective cross-examination at the former trial.

■ We agree with the Court of Appeals' conclusion that an agreement did in fact exist between the State and the witness, and that it should have been presented to the jury in appellant's first trial under the principles of *Burkhalter v. State*, supra.[1] However we must examine the

---

1. The record clearly reflects that there was in fact an agreement, albeit a tacit one, to reward

Anderson for her testimony. The evidence of

court's holding that the error which occurred at the first trial was incurable at a subsequent trial.

In *Burkhalter v. State,* supra, an accomplice witness on cross-examination denied the existence of a deal with the State. The conviction was reversed because the court improperly refused to allow the defendant to prove the agreement by calling the witness' lawyer to testify. We stated that even assuming that the witness did not know of the agreement, "the prosecutor's silence as to the plan not to prosecute conveyed an impression to the jury which the State knew to be false and one which should have been corrected." Id., 493 S.W.2d at 218. Furthermore, we stated that due process demands that the "State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction. This rule does not cease to apply merely because the false testimony goes only to the credibility of a witness." Id. We stated in *Burkhalter,* however, that the State could have prevented a denial of due process by revealing to the jury that there was in fact an agreement with the witness.

In the instant case, Anderson was cross-examined extensively by appellant's counsel at the first trial about the murder in question. He also asked her repeatedly if her testimony was induced in any way by an agreement with the State, which she persistently denied. It appears from the record that appellant and his counsel were not told about the State's arrangement at the first trial. Had the State disclosed the arrangement after Anderson testified, this would have impeached her credibility, and cured any due process violations. See *Burkhalter v. State,* supra.

Accordingly, we cannot agree with the Court of Appeals' statement that Anderson's testimony was permanently tainted because of the nondisclosure of the State's arrangement with Anderson at the first trial.

Nevertheless, we agree that the conviction should be reversed because of the manner in which the State used Anderson's testimony at appellant's trial below. At no time did the State concede that it had an arrangement with Anderson or her attorney. In fact, the State read into the record Anderson's former testimony denying any arrangement with the State.[2]

The State contends that any error was cured because appellant was allowed to call Anderson's attorney at the second trial, who testified in front of the jury about the arrangement. The jury also knew that Anderson's death sentence had been reduced to fifty years.

A similar contention was raised and rejected in *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In *Napue,* an accomplice witness testified falsely on cross-examination that he had received no promise of consideration in return for his testimony. The Illinois Supreme Court

---

this agreement is set out in the opinion of the Court of Appeals, 653 S.W.2d at 874, 875.

**2.** The State read the following into the record:
"Q. [By Mr. Adamo, appellant's counsel at the first trial] Isn't it true, Mrs. Anderson, that you have expectation and a hope that after you testify, the State will work something out with your lawyers to come off of the death sentence, to work out some term of years other than death?
"A. [By Anderson] No, sir.
"Q. You have no expectation of that whatsoever?
"A. No, I don't.
"Q. Is it true that it has been communicated to you from your attorney ... that all you have to do is trust the prosecutor and he will work something out for you?

"A. No, sir.
"Q. ... why are you testifying in this case? Let me ask you that.
"A. Because Feryl killed my parents and I just felt like I should tell my part of it.
" . . .
"Q. [By Mr. Adamo] Now, isn't it a fact that the reason that you're testifying here today is to save your life?
"A. [Anderson] No, sir.
" . . .
"Q. Isn't it a fact that you received a communication to trust your lawyer and trust the prosecutor, although they won't promise you anything about the death case now, you are expecting something to happen?
"A. No, sir.

found that although this testimony was false and the State knew it to be so, the defendant was not entitled to relief "since the jury had already been apprised that [the public defender] 'was going to do what he could' in aid of [the witness], and 'was trying to get something did [sic]' for him." The United States Supreme Court reversed, stating in part:

"It is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment ... The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears ...

"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of a witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend ...

*"We do not believe that the fact that the jury was apprised of other grounds for believing that the witness ... may have had an interest in testifying against petitioner turned what was otherwise a tainted trial into a fair one."* 79 S.Ct. at 1177 (emphasis supplied).

■ In the instant case not only did the State stand silent when Anderson testified falsely at the first trial, it offered such false testimony at appellant's second trial. We do not believe that the conflicting evidence regarding the arrangement presented to the jury is sufficient to turn "what was otherwise a tainted trial into a fair one." *Napue v. Illinois*, supra.. Under *Giglio v. United States*, supra, a new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury. 92 S.Ct. at 766. It is clear that appellant could not have been convicted without Anderson's testimony. Under these circumstances we cannot conclude that the judgment of the jury could not have been reasonably affected by this testimony, and thus the conviction must be reversed.

■ Turning to the sufficiency of the evidence, we note that this is a circumstantial evidence case. On appeal, this Court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983).

Mary Lou Anderson's testimony, read into evidence by the State from the record of appellant's capital murder trial, revealed the following: In late 1977, Anderson was in financial difficulty because of bad checks she had written. She discussed several schemes for raising money with appellant, and told him that she was the beneficiary of a $5,000.00 life insurance policy which she had taken out on her father's life. On the evening of January 2, 1978, appellant came to her apartment in LaFayette, Louisiana, and informed her that he was going to kill her parents. She accompanied appellant to the apartment of Darryl Comeaux where they borrowed a Monte Carlo automobile and obtained a .25 caliber pistol. They went to the Hacienda lounge for a short while and then drove to Texas, stopping to spend the night in Beaumont. On January 3, 1978 they went to a Gibson's store in Beaumont where appellant purchased tape and Anderson purchased a box of .25 caliber ammunition. After leaving Beaumont, they had a flat tire near Houston and were given a ride to a nearby service station where appellant purchased a tire. They replaced the tire and proceeded to Sugarland, arriving about 6:00 p.m. After driving past Anderson's father's home, appellant stopped the car, put out the rear license light and tied Anderson with a rope, telling her he would kill her and her son if she tried to escape or if she said anything. They returned and parked near her father's

home, and appellant entered the house, returning ten to fifteen minutes later with blood on his gloves and a "wild-eyed" look. As they left Sugarland, appellant drove the wrong way on a one-way street, passing a patrol car. Later, on their way back to Louisiana, Anderson threw the excess ammunition out of the window and appellant threw the gun and gloves off of a bridge.

The bodies of Steve and Marjorie Anderson were found at approximately 6:40 p.m. on January 3, 1978 by Marjorie Anderson's daughter. Dr. Joseph Jachimczyk, the Harris County Medical Examiner, performed the autopsies on the bodies and testified that both victims were bound at the wrists and gagged with adhesive tape. Each had been shot three times in the head and he recovered .25 caliber slugs from the bodies.

Before deciding whether this evidence is sufficient to sustain the conviction, we must determine whether the testimony of Anderson, an accomplice witness, is sufficiently corroborated as required by Art. 38.14, V.A.C.C.P., which provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

■ In *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968), this Court wrote: "The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not." 427 S.W.2d at 632.

All the facts and circumstances in evidence may be viewed to furnish the necessary corroboration, and the corroborative evidence may be circumstantial or direct.

*Paulus v. State*, 633 S.W.2d 827 (Tex.Cr. App.1981). However it is not necessary that the corroboration directly link the accused to the crime, or be sufficient in itself to establish guilt. Id.; see also *Attwood v. State*, 509 S.W.2d 342 (Tex.Cr.App.1974); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr. App.1972).

■ Darryl Comeaux testified that on January 2, 1978, appellant and Anderson came to his apartment in LaFayette, Louisiana and appellant asked to borrow a car and a gun. Comeaux loaned appellant a Monte Carlo, and went with appellant to Comeaux's brother's residence where appellant borrowed a .25 caliber gun. Comeaux did not know when the car was returned, but stated that he saw appellant "a while after" and asked him about the gun. Appellant stated that he "got in a bind" and "got rid of" the gun. Comeaux also testified that one of the tires on the Monte Carlo had been replaced.

Thomas Collone, the manager of the Hacienda lounge in LaFayette, and who had known appellant for over 10 years, testified that on the evening of January 2, 1978, appellant came into the club and asked him if he could borrow .25 caliber shells.

Two employees of the Beaumont Gibson's store testified at trial. One testified that on January 3, 1978 she sold a box of .25 caliber bullets to Anderson who was required to sign her name and present identification. The other witness testified that on the same date, she sold appellant two rolls of curity brand adhesive tape.

The owner of a service station at Winnie, testified that he sold a tire to appellant on January 3, 1978. He identified the tire taken from the Monte Carlo as the same type of tire sold by him on that date.

A convenience store clerk in DeWalt, approximately eight miles from Sugarland, testified that she sold cigarettes and beer to appellant "on or about the 1st day of January, 1978."

John Claussen, a police officer in Sugarland, testified that on the evening of January 3, 1978, he passed a Monte Carlo with

Louisiana plates going the wrong way on a one-way street in Sugarland. A few minutes later he was flagged down by Joan Maresh, Marjorie Anderson's daughter, who took him to the murder scene. He testified that the bodies were bound and gagged with adhesive tape, that he found seven .25 caliber casings at the scene, and that he found a blood-smudged spool of tape in the Andersons' yard.

Officer L. J. Bertrand of the Louisiana State Police testified that he located the Monte Carlo in Louisiana and recovered a new tire from it. He also found a live .25 caliber round in the Monte Carlo.

We conclude that the nonaccomplice testimony in the instant case tended to connect appellant with the offense and thus was sufficient to corroborate the accomplice testimony of Anderson. The corroborating testimony placed appellant near the scene of the crime at the time of its commission. See *Passmore v. State,* 617 S.W.2d 682 (Tex.Cr.App.1981). Furthermore it placed appellant in the company of the accomplice. Finally it provided evidence of incriminating character by showing that appellant borrowed a .25 caliber gun which he later got rid of, that he purchased adhesive tape on the date of the offense, and that he borrowed a Monte Carlo. The evidence showed that the victims were killed by .25 caliber bullets and were bound and gagged with adhesive tape. Furthermore a Monte Carlo was seen near the scene and later, the Monte Carlo appellant borrowed was found to have a new tire on it purchased in Texas, and a live .25 caliber bullet was found in the same car.

Since Anderson's testimony was sufficiently corroborated, we find the evidence to be sufficient to sustain the conviction. As heretorefore noted, we further agree with the Court of Appeals' conclusion that the judgment of the trial court must be reversed, but we hold that reversal is mandated due to the State's nondisclosure *at the trial below* of an agreement for leniency in exchange for Anderson's testimony.

The judgment of the Court of Appeals is affirmed.