**Ray SAMBRANO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–87–00140–CR.**

Court of Appeals of Texas,
San Antonio.

June 22, 1988.

Rehearing Denied Aug. 3, 1988.

Richard E. Langlois, Kosub & Langlois, San Antonio, for appellant.

Stella Saxon, Asst. Dist. Atty., Karnes City, for appellee.

OPINION

Before REEVES, DIAL and CHAPA, JJ.

CHAPA, Justice.

This is an appeal from a conviction for delivery of methamphetamine. Appellant, Ray Sambrano, was convicted by a jury and punishment was set by the court at confinement for 45 years.

The single issue before us is whether the trial court abused its discretion in overruling appellant's motion for new trial based on newly discovered evidence.

The record reflects that the State presented a case against appellant relying entirely on the accusations of Juan Guerra. During the trial, in addition to accusing appellant of delivery of methamphetamine to him, Guerra admitted he was paid $100.00 by the State every time he purchased drugs from someone, was provided with gas money and a room by the State,

was a convicted felon on drug charges in State, Federal and Mexican courts, but denied under oath that he was "shooting up heroin" at the time he made this case against the appellant. However, in a subsequent trial, Guerra judicially confessed he had deliberately lied under oath during the trial of the instant case, because he was in fact purchasing his own heroin in San Antonio and "shooting up heroin" at the time he made this case against the appellant. This is the newly discovered evidence which formed the basis for appellant's overruled motion for a new trial and this appeal.

Initially, the State contends appellant failed to exercise due diligence during the trial of this case by failing to subpoena Dr. Payte with the methadone clinic of San Antonio. However, it was the State that vouched for the credibility of Guerra, and the appellant was not aware of what Guerra's testimony would be until the actual trial, or that his testimony was false until a subsequent trial. It is further unclear to this court that Dr. Payte would have revealed Guerra's false testimony even if he had been at the trial. We find no lack of diligence on the part of the appellant.

The State's principal argument is that the new trial was properly denied because the newly discovered "evidence is merely impeaching". In so doing, the State relies on *Jones v. State*, 711 S.W.2d 35 (Tex.Crim. App.1986) (en banc). The dissent additionally relies on *Gardner v. State*, 730 S.W.2d 675 (Tex.Crim.App.1987) (en banc). However, reliance upon these cases is misplaced in that they are clearly distinguishable.

In *Jones*, the State's undercover agent testified that he had purchased drugs from the appellant, and later had purchased fake pills purported to be percodan from a woman he identified as Tina Cox. Appellant contended Tina Cox could not be found at the time of the trial and did not present her testimony. However, after the trial, appellant requested a new trial based upon newly discovered testimony of Tina Cox, who

he had now found. However, Cox merely denied having sold fake pills to the State's undercover agent, and "necessarily placed herself in a position of ignorance as to [the] whereabouts [of the agent and appellant]." *Jones v. State*, 711 S.W.2d at 39. Concluding the trial judge properly denied the new trial, the Court of Criminal Appeals stated:

> Moreover, we could not fault the trial court had it found Cox' testimony to be *inherently unbelievable*. Admitting that she had sold what was purported to be a controlled substance would have been tantamount to confessing her guilt in the commission of a class A misdemeanor. *See* V.A.C.S. Art. 4476–15, Sections 4.09(a)(6) and (b)(4), and 1.02(5). Thus, she had a *motive* to deny any transaction with Beasley [undercover agent].
>
> \*    \*    \*    \*    \*    \*
>
> Assuming then, *without deciding*, that appellant has made the requisite *showing of due diligence*, we hold that the new evidence posited by appellant in this cause, *being of impeachment value only*, and *of at least questionable credibility*, was not such as would probably change the result in any respect upon a new trial. Under the circumstances we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial. (Emphasis added.)

*Jones v. State*, 711 S.W.2d at 39, 40.

In the instant case, we find no lack of due diligence by appellant, and have no credibility problem with someone who judicially confesses to prior false testimony at a subsequent trial. Further, in appellant's trial, the newly discovered evidence not only clearly established false testimony on the part of Guerra, the only witness for the State, but a motive to do exactly what he did, lie under oath. The extremely questionable background of Guerra which made vouching for his credibility nearly impossible [1], made the newly discovered evidence

1. The record reflects a statement made to the Atascosa County Probation Officer by Juror Frank Thompson:

> It was hard on me trying to determine who was telling the truth. I felt the State did not

critical and more than "merely impeaching."

In *Gardner*, State's witness Walton, testified in the punishment stage against the accused and failed to disclose two remote convictions. However, the trial judge indicated he would have excluded the convictions as too remote to have a bearing on the witness' credibility had they been disclosed during the punishment phase. The Court of Criminal Appeals, after insinuating the convictions were remote, stated, "the incremental weight of such evidence to impeach Walton's credibility was not so great as would probably bring about a different result, *viz.*, a negative finding on the issue of future dangerousness, upon a new trial." In addition to the fact that the instant case does not involve the issue of remoteness, the reasons heretofore set out which distinguish the case before us from *Jones*, also distinguishes it from *Gardner*. Thus, the authorities relied upon by the State and dissent do not support their contentions.

The general rule that merely cumulative, corroborative, collateral or impeaching evidence rarely is judged by appellate courts to be of such weight as likely to bring about a different result, has numerous exceptions. *Jones v. State, supra; Granger v. State*, 683 S.W.2d 387 (Tex.Crim.App. 1984) (en banc); *Burkhalter v. State*, 493 S.W.2d 214 (Tex.Crim.App.1973); *Spencer v. State*, 69 Tex.Cr.R. 92, 153 S.W. 858 (1913). A possible standard for determining when the newly discovered evidence is no longer "merely cumulative or impeaching" was enunciated by the Texas Court of Criminal Appeals in *Spencer v. State.*

As said in some of the opinions, the reason for the rule forbidding a new trial for the purpose of admitting cumulative [impeaching] testimony is that public policy, looking to the finality of trials, requires that a defendant be held to diligence in preparing their cases for trial; but this policy, which seeks to limit continued litigation, should never be applied where the newly discovered testimony may be of that cogency and force where

have concrete evidence because the credibility

it might probably show that an innocent man may probably be caused to suffer for a crime he did not commit. Courts are organized, and *the object of the law is that the true facts may be arrived at and justice administered;* and where the evidence is about upon an equipoise as to whether a man committed an offense or not, *if there is really newly discovered testimony coming from a credible source,* this rule will *be held in subordination to the great end to be obtained— that is, meting out justice to each individual citizen.* (emphasis added.)

*Spencer v. State*, 153 S.W. at 860.

That a conviction obtained through the use of false testimony may reach constitutional proportions has been recognized by the United States Supreme Court. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

A new trial is required if 'the false testimony ... in any reasonable likelihood could ... have affected the judgment of the jury....' *Napue, supra,* at 271, 79 S.Ct. at 1178, 3 L.Ed.2d at 1222.

*Giglio v. United States*, 405 U.S. at 154, 92 S.Ct. at 766.

The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, *does not cease to apply merely because the false testimony goes only to the credibility of the witness.* The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as *the possible interest of the witness in testifying falsely* that a defendant's life or liberty may depend. As stated by the New York Court of Appeals in a case very similar to this one, *People v. Savvides*, 1 N.Y.2d 554, 557, 154 N.Y.S.2d 885, 887, 136 N.E.2d 853, 854, 855.

'It is of no consequence that the falsehood bore upon the witness' credibility

of Juan Guerra was not proven....

rather than directly upon defendant's guilt. *A lie is a lie, no matter what its subject,* and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth.... That the district attorney's silence was not the result of guile or a desire to prejudice matters little, *for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.'* [2] (emphasis added)

*Napue v. Illinois,* 360 U.S. at 269–70, 79 S.Ct. at 1177.

The Texas Court of Criminal Appeals has followed the United States Supreme Court by stating:

> Under *Giglio v. United States, supra,* a new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury. 92 S.Ct. at 766. *It is clear that appellant could not have been convicted without Anderson's* [Guerra] *testimony.* Under these circumstances we cannot conclude that the judgment of the jury could not have been reasonably affected by this testimony, and thus the conviction must be reversed. (emphasis added).

*Granger v. State,* 683 S.W.2d at 391.

In *Burkhalter v. State, supra,* the Texas Court of Criminal Appeals expanded the principle thereby emphasizing the urgency of a fair trial free from even false testimony by innuendo. The prosecution advised the lawyer for Whitehurst, a critical witness for the State, that if Whitehurst testified without a grant of immunity, any charges against him would be dismissed. However, Whitehurst was not to be told of this agreement by his attorney. The record reflects that Whitehurst was in fact not told of the agreement, although it was suggested to him that if he testified against Burkhalter without immunity, it "could help his case." During the trial, Whitehurst truthfully denied he had any agreement with the State, and the trial court refused to permit disclosure of the State's plan not to prosecute Whitehurst. In rejecting the State's argument that there was no false testimony from Whitehurst and that the error, if any, was harmless, the Court stated:

> The point is that *the jury should have been given the opportunity to judge Whitehurst's credibility for themselves.* (emphasis added)

> \* \* \* \* \* \*

> As recognized in *Napue,* the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.

> \* \* \* \* \* \*

> Whitehurst was *the only source of direct testimony* tending to establish the alleged main fact of appellant's advising the commission of the offense charged in this case. As previously stated, *it is of no consequence* that the falsehood *bore upon the witness' credibility* rather than directly upon appellant's guilt. (emphasis added)

> \* \* \* \* \* \*

> Due process, perhaps the most fundamental concept in our law, embodies principles of fairness rather than an immutable line drawing as to every aspect of a criminal trial. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). *See also Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

*Burkhalter v. State,* 493 S.W.2d at 218, 219.

In the instant case, Guerra's intentional false testimony was even more critical in evaluating his credibility in view of his extremely questionable background. As in all the cases heretofore discussed, the jury should have had an opportunity to determine his credibility with full knowledge of his false testimony and his personal needs for drugs at the time he made this case for the State. Under the circumstances of the

---

**2.** The record does not reflect, nor is it suggested that the State in the instant case was aware of Guerra's false testimony. However, the effect was nonetheless the same whether the State was aware or not, it prevented "a trial that could in a real sense be termed fair...."

instant case, this could only have been accomplished with a new trial.

Further, Guerra's motives in testifying against appellant is another critical aspect which also makes the newly discovered evidence of Guerra's false testimony more than "merely impeaching."

The issue here is the application of the Sixth Amendment of the Constitution of the United States, which the Supreme Court of the United States has held guarantees significant cross-examination rights including exposure of a witness' motivation in testifying.[3]

The Texas Court of Criminal Appeals directs that the Sixth Amendment must be liberally construed in order that an accused receive all the protections intended by the Constitution.

The Court has frequently stated that *great latitude* should be allowed the accused in showing *any fact* which would tend to establish ... *motive* ... upon the part of *any witness* testifying against him. *See Seal v. State*, 496 S.W.2d 621 [ (Tex.Crim.App.1973) ]; *Hooper v. State*, 494 S.W.2d 846 [ (Tex.Crim.App.1973) ]; *Burkhalter v. State*, 493 S.W.2d 214 [ (Tex.Crim.App.1973) ]; *Wood v. State*, 486 S.W.2d 359 [ (Tex.Crim.App.1972) ]; *Jackson v. State*, 482 S.W.2d 864 [ (Tex.Crim.App.1972) ]; *Fletcher v. State*, 437 S.W.2d 849 [ (Tex.Crim.App.1968) ]; *Blake v. State*, 365 S.W.2d 795 [ (Tex.Crim.App.1963) ]. *See also Mutscher v. State*, 514 S.W.2d 905 [ (Tex.Crim.App.1974) ]. (emphasis added)

*Evans v. State*, 519 S.W.2d 868, 871 (Tex. Crim.App.1975).

The *motives* which operate on the mind of a witness while he testifies should never be regarded as immaterial or irrelevant. *McDonald v. State*, 77 Tex.Cr.Rep. 612, 179 S.W. 880 (1915). *Great latitude* should be allowed the accused in showing *any fact* which would tend to establish ... *motive* ... upon the part of any witness testifying against him. The jury should be given the opportunity to judge for themselves the witness's credibility in light of the witness's ... *motive for testifying*. *Wood v. State*, 486 S.W.2d 359 (Tex. Crim.App.1972); *Coleman v. State*, 545 S.W.2d 831 (Tex.Crim.App.1977). (Emphasis added.)

*Steve v. State*, 614 S.W.2d 137, 140 (Tex. Crim.App.1981).

■ In the instant case, the newly discovered evidence consisted of a judicial confession of Guerra that he had deliberately testified falsely during his testimony in the appellant's trial. The newly discovered evidence revealed for the first time that, in fact, Guerra was "shooting up heroin" at the time he was making this case for the State. It obviously must follow that at that time, he was in need of money to satisfy his personal need for heroin. Since he was making $100.00 from the State ev-

---

**3.** In *Davis v. Alaska,* the Supreme Court of the United States stated:

   The Sixth Amendment to the Constitution guarantees the right of an accused ... 'to be confronted with the witnesses against him' ... 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

   \*   \*   \*   \*   \*   \*

   We have recognized that the exposure of a witness' motivations in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).[4]

4. In *Greene* we stated:

   Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, *might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.* We have formalized these protections in the requirements of confrontation and cross-examination.... (emphasis added.)

*Davis v. Alaska,* 415 U.S. 308, 315–317, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–54 (1974).

ery time he accused someone of selling drugs to him, it stands to reason he had a strong, perhaps urgent, motive to accuse anyone in order to obtain the State money to satisfy his own personal need for heroin. Thus, this evidence was critical to form the basis for an inference that Guerra's urgent need for heroin could have influenced his accusations as well as his testimony against appellant. As recognized by the Supreme Court of the United States, there is no way of knowing what effect, if any, this would have on a jury, but the jury had the right to know the truth in order to make their determination as to the witness' credibility. *Davis v. Alaska, supra.* It is this type of motivation for testifying, that the Supreme Court of the United States and the Texas Court of Criminal Appeals were referring to in connection with the rights of an accused under the Sixth Amendment of the Constitution. Since the judicial confession of Guerra came about subsequent to the trial of appellant's cause, appellant could not possibly be afforded his rights under the Sixth Amendment without first being granted a new trial. Thus, appellant was denied his Sixth Amendment rights which cannot be justified by a contention that the new evidence was "merely impeaching." [4]

As in *Napue, Giglio, Granger,* and *Burkhalter,* appellant was denied due process in that his conviction was tainted with false testimony which "in [all] reasonable likelihood [could] have affected the judgment of the jury." *Napue,* 360 U.S. at 271, 79 S.Ct. at 1178. As in *Davis, Evans,* and *Steve,* appellant was denied his rights under the Sixth Amendment of the Constitution by being prohibited from attempting to establish Guerra's motives for testifying against him. As in *Napue,* appellant was entitled to a new trial since the newly discovered evidence "in all reasonable likelihood [could] have affected the judgment of the jury." *Napue,* 360 U.S. at 271, 79 S.Ct. at 1178.

Recognizing the considerable expense already involved in this undercover operation of Atascosa County which resulted in numerous cases, the same urgent considerations spurn this opinion which drove the Texas Court of Criminal Appeals to eloquently state:

We cannot pretend to be oblivious to the time and expense involved in the presentation of this cause; the voluminous record now before this Court is sufficient evidence of that. Our intent is not to punish the trial court or the prosecution for the error committed, but rather to avoid an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*Burkhalter v. State,* 493 S.W.2d at 218.

The judgment is reversed, and the cause is remanded for a new trial.

DIAL, Justice, dissenting.

This is an appeal from a conviction for delivery of a controlled substance, to-wit, less than 28 grams of methamphetamine. The defendant was found guilty in a jury trial, and punishment was set by the court at confinement for a term of 45 years.

The single issue in the case is whether or not the trial court abused its discretion in overruling the defendant's motion for new trial alleging newly discovered evidence.

The defendant concedes that the decision to grant a new trial for newly discovered evidence is addressed to the sound discretion of the trial court. *Eddlemon v. State,* 591 S.W.2d 847 (Tex.Crim.App.1979). Should it appear to the trial court that under the circumstances of the particular case the credibility or weight of the new evidence is not such as would probably bring about a different result upon a new trial, it is within the trial court's discretion

---

**4.** We conclude that [appellant was] denied the right of effective cross-examination, which is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis v. Alaska, supra; Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed. 2d 314 (1966).
*Evans v. State,* 519 S.W.2d at 873.

to deny the motion for new trial. As a rule, newly discovered evidence which is merely cumulative, corroborative, collateral or impeaching will rarely be judged by a trial or appellate court to be of such weight as likely to bring about a different result. *Jones v. State*, 711 S.W.2d 35, 37 (Tex. Crim.App.1986).

To determine the applicability of these rules to the present case it is necessary to briefly summarize the facts. The defendant was accused of selling methamphetamine to Juan Guerra, the State's principal witness. Guerra testified that the defendant invited him into his home with another individual and there sold him a plastic bag containing methamphetamine for $150.00.[1] Guerra admitted that he had entered into an agreement with the State because he had been arrested for possession of heroin. The agreement was that he would make narcotics cases for the State, for which he would be paid $100.00 each, and he would be given 8 years' probation on his heroin charge. He also admitted having two previous convictions for marihuana possession, that he was a heroin addict and was receiving methadone treatment for his addiction.

The critical testimony was Guerra's denial that he was "shooting up" heroin while he was operating as an undercover informant in Atascosa County or that he had a problem "keeping off of the stuff" during that period of time.

Guerra's undercover efforts resulted in 142 indictments. He testified for the State in other trials. At a trial subsequent to the instant case Guerra admitted that he had been using heroin as a means of maintaining his cover and because of the pressure of the type of work he was doing. He admitted purchasing heroin for personal use and giving urine specimens that revealed his drug usage. This testimony constituted the newly discovered evidence alleged in the defendant's motion for new trial.

It is important to note that the defendant is not contending that Guerra's drug usage impaired his ability to observe or recall the facts in the case in any way. The argument before this Court is that the newly discovered evidence would establish that Guerra had been untruthful in his testimony before the jury during the defendant's trial.

The newly discovered evidence had no bearing on any issue under the indictment in the case but was instead of a collateral nature. Its only purpose would have been for impeaching the witness Guerra. Since the jury already knew that Guerra was a heroin addict with several prior narcotic convictions and was being treated for his addiction, the newly discovered evidence was merely cumulative of that already before the jury establishing Guerra's addiction.

I believe the newly discovered evidence was not of such weight as to necessarily inject reasonable doubt into the case. Even if the jury believed that Guerra had been using drugs, it would not necessarily have found that the defendant was not guilty. The incremental weight of such evidence to impeach Guerra's credibility was not so great as would probably bring about a different result. *Gardner v. State*, 730 S.W.2d 675, 703 (Tex.Crim.App. 1987). I believe that the newly discovered evidence, being of impeachment value only, was not such as would probably change the result in any respect upon a new trial. Under the circumstances I would hold that the trial court did not abuse its discretion in denying defendant's motion for new trial.

## ON STATE'S MOTION FOR REHEARING

CHAPA, Justice.

On motion for rehearing, the State for the first time, contends that appellant "never called to the attention of the trial court" the evidence that established Juan Guerra's false testimony. However, the supplemental transcript does not support the contention.

---

1. Other State's witnesses testified to the chain of custody of the controlled substance and its test-

ing by a chemist to determine that it contained methamphetamine.

The supplemental transcript contains the trial court's Order Denying Defendant's Motion for New Trial. The order states:

ORDERED that defendant's motion for new trial be denied on all grounds;

And it is further ORDERED, that the record on appeal be supplemented by including within the statement of facts on appeal in this matter the testimony of Juan Guerra from the trial of Vernon Diggs in Case No. A–86–10–0366 and Weldon Earl Mann Case No. A–86–10–0288.

The court finds that the testimony of Juan Guerra was made subsequent to the trial in this matter and that the testimony of Juan Guerra is material to the issue raised in defendant's motion for new trial.

The court further finds that the testimony of Juan Guerra in the trial of Vernon Diggs and Weldon Earl Mann is testimony that is impeaching and not newly discovered evidence of such a nature that requires the court to grant defendant Ray Sambrano a new trial.

It is THEREFORE ORDERED that the official court reporter who recorded the testimony at the trial of Vernon Diggs and Weldon Earl Mann be ORDERED to prepare a partial record of those trials that includes only the testimony of Juan Guerra in question and answer form be made part of the statement of facts in this cause for the record on appeal and that such transcription be completed on or before May 11, 1987.

It is therefore obvious, that the trial judge was made aware of the evidence pertaining to Juan Guerra's false testimony, considered the evidence, determined that the evidence was merely "impeaching," and determined further that it was insufficient to require a new trial. The motion for rehearing is denied.