**Homer WOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45219.**

Court of Criminal Appeals of Texas.

Nov. 8, 1972.

B. D. Moye, of Old & Moye, Mt. Pleasant, for appellant.

Tom O'Connell, Dist. Atty., McKinney, Bill Joueltte, Asst. Dist. Atty., McKinney, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

The offense is murder with malice; the punishment 99 years.

The record reflects that on September 7, 1969, appellant shot and killed Hollie Shelton Young, in the presence of several eye witnesses. The shooting occurred outside the residence of Monroe and Doris Combs. Appellant testified that earlier that same day, the deceased, Hollie Shelton Young, had inflicted a severe beating on him. At the confrontation at the Combs' residence,

the deceased was partially facing one of the other persons present, Kenneth Wood, when appellant, about 5 to 7 feet away, raised his gun and "shot the back of Hollie Young's head off." Appellant testified that the deceased kept moving closer toward him, and he fired his gun, without aiming, because Hollie Young (deceased) suddenly reached in his right pocket, thereby putting appellant in fear for his life.

Appellant raises six grounds of error.

In his first ground of error, appellant alleges error in the refusal of the court to allow defense counsel to cross-examine a witness for the State, Doris Combs, in regard to any malice, bias, and prejudice she might have had toward the appellant. When defense counsel attempted to question Mrs. Combs as to ill feelings toward appellant, the State objected and the objection was sustained. Defense counsel timely prepared his bill of exception and cross-examined Mrs. Combs outside the presence of the jury. In its brief, the State acknowledges that the trial judge apparently erred in sustaining this objection. However, the State urges this Court to label the error harmless because of what they refer to as the "negative answers" received from Mrs. Combs during the preparation of the bill of exception. The following colloquy occurred as defense counsel questioned Doris Combs:

"Q The truth of the matter is neither you nor your husband liked the Defendant Homer Wood and have not liked him since he has been in the family?

"A That is not true.

"Q That is not true?

"A No.

"Q I will ask you if it isn't true your husband was offended by a statement that the Defendant Homer Wood made relative to the care of your mother-in-law; Mrs. Combs. And that there has been a good deal of trouble and hard feelings over that?

"A We had a son in a Dallas hospital at the time. And we could not attend to Mrs. Combs and his sister came down to the house and didn't want to because she said Homer was mad because she was having to take Mrs. Combs every day to the doctor she had cancer on her nose.

"Q There was hard feeling over that between your husband Mr. Combs and between you and Mr. Wood?

"A Not between me, no.

"Q Just your husband and Mr. Wood but there was hard feelings and of course you being a good wife took your husband's side did you not?

"A Well, sure anybody would.

"Q That is right. So, you have the same feeling then toward Mr. Wood and had at the time it happened and have had all along since you went to Dallas with your son and this trouble arose. You have the same feeling towards this man that you had at that time, is that correct?

"A I never held anything against Homer really, no.

"Q Your husband did didn't he?

"A Not really.

"Q Well, now awhile ago you said he did and now you say not really which is true?

"A Well, I don't think he ever held anything against Homer it was just a little difference in the family that is all you can say it was.

"Q There was a family difference and feelings between them?

"A Yes."

Certainly, Doris Combs' answers are not of such a negative character as to dispel any doubts of malice, bias, or prejudice toward appellant. Great latitude should be allowed the accused in showing any fact which would tend to establish ill feeling, bias, motive and animus upon the part of any witness testifying against him. The jury should have been given the opportunity to judge for themselves her credibility, in light of her feelings toward appellant. Graham v. State, 98 Tex.Cr.R. 259, 265 S. W. 592 (1924); Smith v. State, 106 Tex. Cr.R. 202, 291 S.W. 544 (1927); Fletcher v. State, 437 S.W.2d 849 (Tex.Crim.App. 1969); Blake v. State, 365 S.W.2d 795 (Tex.Crim.App.1963); Jackson v. State, 482 S.W.2d 864 (Tex.Crim.App.1972).

■■ In point of error # 3, appellant refers us to the refusal of the trial court to allow the appellant to testify as to his knowledge of the violent nature of the deceased. Appellant would have testified that the deceased had told him that he beat up three men with brass knuckles and took a gun away from one man and whipped him. The State counters that this was not error since "the appellant did not offer to prove that specific acts of violence did in fact occur, but only offered the testimony that the deceased had at some prior time informed the defendant of one incident." The State contends that such evidence would have been admissible only through the testimony of a third party witness to such specific violent acts. However, in Texas, it has long been the rule that where there is evidence of threats by the deceased against a defendant accused of murder and the defendant is claiming self-defense, the defendant is permitted to introduce evidence as to an inquiry whether the deceased was a man of violent or dangerous character. Tex.Penal Code Ann., Art. 1258 (1961). See also Lewis v. State, 463 S.W.2d 186 (Tex.Crim.App.1971). Where the defendant has knowledge of previous offenses or acts of the deceased against others, he may show such acts. Garcia v. State, 454 S.W.2d 400 (Tex.Crim.App. 1970). The contention that the State makes in the present case, that third party witnesses were a prerequisite to such a showing, is without merit. The record reflects repeated testimony by appellant that the deceased told him he "ought to have a hole put through me."

■■ Therefore, in the light of this evidence of a threat made to appellant by the deceased and the fact that appellant was claiming self-defense, evidence of the deceased's character was relevant and should have been admitted,[1] either to show the reasonableness of defendant's claim of apprehension of danger or to show that the deceased. was in fact the aggressor. Dempsey v. State, 159 Tex.Cr.R. 602, 266 S.W.2d 875 (Tex.Crim.App.1954); see Brown v. State, 477 S.W.2d 617, 621 (Tex. Crim.App.1972); Lewis v. State, supra.

We need not consider appellant's remaining grounds of error.

The judgment is reversed and the cause is remanded.

1. The evidence which appellant attempted to introduce was that he knew the deceased had previously beaten up three men with brass knuckles and taken a gun away from one man and whipped him. In light of the circumstances surrounding the shooting, these prior acts of violence were surely admissible to tend to explain the act of the deceased in suddenly reaching for his right pocket. See Dempsey v. State, 159 Tex.Cr.R. 602, 266 S.W.2d 875, 878 (Tex.Crim.App. 1954).