Gilbert Lee KIRCHNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 4–86–00305–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 23, 1987.
Rehearing Denied Oct. 16, 1987.

Charles Campion, San Antonio, for appellant.

Sam Milsap, Jr., Former Crim. Dist. Atty., Fred G. Rodriguez, Criminal Dist. Atty., Mary Farias, Juan Chavira, Illse D. Bailey–Graham, San Antonio, for appellee.

Before CADENA, C.J., and DIAL and CHAPA, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a conviction by a jury for indecency with a child. Punishment was set by the court at five years probated.

The first point of error is that the trial court erred in refusing to admit into evidence defense testimony showing bias, motive and ill-will on the part of the State's witness, Bertha Kirchner. Bertha Kirchner was the defendant's ex-wife and was the mother of the child complainant.

In his brief the defendant states that he wanted to show that Mrs. Kirchner had developed a keen bitterness towards the defendant based upon their previous domestic relationship. He said he was not allowed to do this even though he explained the purpose of such inquiry.

■ It is unquestioned that a witness may be impeached by a showing of interest, bias, prejudice or other motive which tends to effect his credibility. *Steve v. State*, 614 S.W.2d 137, 140 (Tex.Crim.App. 1980), 1 RAY TEXAS EVIDENCE 3d ed. § 670. But in order to preserve a complaint for appellate review a defendant must have presented to the trial court a timely request or objection with sufficient specificity to apprise the court of the grounds. He must then obtain a ruling on that request or objection. TEX.R.APP.P. 52(a). Nowhere did the trial judge rule that Bertha Kirchner's keen bitterness, ill-will, bias or prejudice against the defendant could not be properly proved by appropriate testimony.

To place the questions that the court did actually rule upon in proper context, it is necessary to understand that the defendant and the witness Bertha Kirchner were married in 1979, were separated in 1982 and were divorced in March 1983. The offense was alleged to have occurred August 19, 1984, and the trial was in March 1986.

The defendant only refers us to three places in the record where questioned rulings were made by the trial court. The first one occurred during cross-examination of Bertha Kirchner by the defense counsel. She was asked "who filed the petition for the divorce?" The State's objection as to relevance was sustained by the court. The second question inquiring as to whether or not the defendant had children by a previous marriage was also ruled to be irrelevant by the trial court. The defense counsel then stated that he wished to develop

the relationship that the witness and the defendant had over the years. But that was certainly not the question asked and ruled on by the court at that time.

When the defendant testified, he was permitted to describe in detail the deteriorating relationship between him and Bertha Kirchner. The defendant was also permitted to describe the personality traits of Bertha. In response to another objection the court gave a ruling and an explanation as follows:

> I think the objection is well taken, counsel. I don't think that—see, we are trying a child molestation case, we are not trying their divorce. The problem is that *the relationship between these parties that have some relationship to this offense are relevant.* Anything else isn't. You know, it is just sort of not really connected with it.

The judge was obviously attempting to permit the defendant the latitude necessary to described fully his relationship to Bertha as it related to the offense. The defendant was permitted to describe fully his relationship with the witness contemporaneous with the alleged offense.

The only other question referred to in the defendant's brief on which there was an adverse ruling occurred during the direct examination by the defense of Shirley Parker, sister of the defendant. She was asked, "What did Bertha Kirchner tell you in regard to Gilbert Kirchner at that time frame?" The State objected on the grounds that it was a hearsay statement, and the court inquired if it was being offered under some theory that made it an exception to the hearsay rule. The defense counsel responded "motive, scheme, plan, design, as far as the allegations that are before this jury." The objection was then sustained.

Under TEX.R.CRIM.EVID. 803(3) a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design) is not excluded by the hearsay rule. However, defendant does not urge reliance on this rule in his brief. As best can be determined, defendant's present contention is that it was an offer to show a prior inconsistent statement by the witness Bertha Kirchner. On cross-examination Bertha had denied that she had told the defendant that she was going to "get" him. She further denied having told anyone that she would "destroy" the defendant. She did admit that she told the defendant she was going to do something about it.

As part of defendant's bill of exception Shirley Parker was asked if Bertha Kirchner had told her she would destroy the defendant. Parker testified that sometime prior to August 19, 1984, Bertha said she was hurt she would like to make the defendant feel the hurt; she did not say "destroy." She did say she would get even with him.

■ Since the ruling of the trial judge complained of had to do with whether or not the evidence came under one of the exceptions to the hearsay rule, it is incumbent on the defendant to give argument and authority supporting the same allegation of error. Otherwise, it is not reviewable on appeal. *Milligan v. State,* 554 S.W. 2d 192, 195 (Tex.Crim.App.1977).

■ If however, the defendant's contention on appeal is that testimony of Parker should have been admitted to show prior inconsistent statements of Bertha Kirchner, there is no reversible error for an additional reason. Any inconsistencies on the part of Bertha Kirchner to be gleaned from Parker's testimony on the bill of exception are so minute that we find beyond a reasonable doubt that any error in the exclusion of the testimony made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2). Error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is effected. TEX.R.CRIM. EVID. 103(a).

■ The questions inquiring as to who filed the petition in the divorce case and how many children the defendant had by prior marriage had absolutely no tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable. The evi-

dence was not relevant and was thereof inadmissible. TEX.R.CRIM.EVID. 401 and 402. The argument that the answers might have led to admissible evidence is rebutted by the fact that the trial court permitted the defendant to testify concerning the prior relationship of the parties and its deterioration. The defendant was also permitted to testify concerning the personality traits of Bertha Kirchner that had a bearing on the controversy.

Nowhere is it demonstrated that the trial judge made an incorrect ruling. Therefore, the first point of error is overruled.

The second point of error is that that the trial court erred in finding the four year old complainant competent to testify. TEX.R.CRIM.EVID. 601 (which replaced art. 38.06 TEX.CODE CRIM.PROC. effective September 1, 1986) now provides that every person is a competent witness except an insane person or children who "after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated."

A hearing was held on the defendant's motion to determine competency. Though some of the child's answers were conflicting and showed confusion, her competency was a question for the trial court. The court's decision will not be disturbed on appeal in the absence of an abuse of discretion. *Garcia v. State*, 573 S.W.2d 12, 14 (Tex.Crim.App.1978). In determining whether there was an abuse of discretion, a review of all the child's testimony rather than just the preliminary qualification should be made. *Fields v. State*, 500 S.W.2d 500, 503 (Tex.Crim.App.1973). We note that in *Fields* the Court of Criminal Appeals found no abuse of discretion in the trial court permitting a four year old witness to testify. We find no abuse of discretion here and overrule the point of error.

In his last point of error, appellant contends the evidence is insufficient to sustain his conviction. We disagree.

The standard of review in both circumstantial and direct evidence cases requires that we look at the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 563 (1979); *Dickey v. State*, 693 S.W.2d 386, 387 (Texas.Crim.App.1984) (en banc). In a trial by jury, reconciliation of conflicts in contradictions in the evidence is within the province of the jury, and such conflicts will not call for reversal if there is enough credible testimony to support the conviction. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982) (en banc). Looking at the evidence in the light most favorable to the prosecution the record contains some testimony from the child complainant that the alleged offense took place. Bertha Kirchner testified that the child complained about the incident to her the same night when she discovered the vaginal area red and swollen. The child's teacher Frances Bollier, testified that the child complained about the incident to her. Debra Randall, a Bexar County Child Welfare social worker, testified that the child had indicated at one point in the videotape that the accused had touched her vagina. Dr. William Gross, the child's pediatrician, testified that although he had examined her three weeks after the incident and found no definite evidence of a sexual attack, the attack could possibly have taken place. The evidence reflects conflicts and contradictions, which were properly resolved by the jury. Thus, if the jury believed the evidence most favorable to the prosecution, as they had a right to do, this Court has no reason to disturb their decision. The intent requirement of the offense charged can be inferred from the conduct the jury believed the accused was guilty of committing. *Beltran v. State*, 593 S.W.2d 688 (Tex. Crim.App.1980).

The last point of error is overruled, and the judgment of conviction is affirmed.

CHAPA, Justice, concurring.

I agree with the majority opinion that the appellant's brief fails to direct this Court to

properly preserved error in the record to sufficiently show the trial court committed reversible error. However, I take issue with the State's suggestion that evidence of Mrs. Bertha Kirshner's past ill-feelings towards appellant was inadmissible as too remote to have sufficient probative value to outweigh the potential risk of prejudice, embarrassment or harassment to her.

Child molesting cases present very special problems to trial and appellate judges which require very careful scrutiny. The typical child molesting case involves a child of tender age. Because the law recognizes the natural inclination of such children to be irresponsible, it imposes no severe duties upon them. The fact that such a child can be influenced easily by its custodian must also be recognized. Thus a serious question of who really is the complainant is always present in such cases.

The natural inclination to feel extraordinary sympathy for a child perceived sexually abused is as great as the natural inclination to feel repulsion, disgust and vengefulness towards an adult accused of the sexual abuse. The potential, under these emotionally charged circumstances, to insufficiently concentrate on the constitutional rights of an accused is enhanced. These circumstances should not result in depriving an accused of a fair trial under the law. Nor is it meant to suggest that children of tender age are to be ignored when their rights are infringed upon. It is with all children in mind that constitutional rights must be protected. For the children of today will be the adults of tomorrow, who will be the ones to suffer should the constitution become an old dead parchment of no significant value which will no doubt occur tomorrow if it is not upheld today.

This is such a case which involves a complainant who was three years and one month old at the time of the alleged offense, and four years and eight months old at the time of the trial. The alleged incident made the subject of this trial allegedly took place on the 19th day of August, 1984, and involved the allegation that the appellant inserted his finger in the child's "tutu," a term which was used in the home for vagina. The record reflects the child testified while sitting on the lap of her older sister. Her testimony contained the expected deviations of a child of such a tender age. The child complainant failed to answer some questions, other answers could not be understood by the reporter, other answers resulted in merely "indicating," some of her answers were clearly in error, and at one point during the trial, the child made the following spontaneous statement according to the record:

/EURBGS [sic] that one with the mustache, did a bad thing to me. Maybe he is the one. He looks like my daddy.

The record further reflects that during the video interview, after accusing the appellant of improperly touching her with her clothes on, the complainant ended the interview stating appellant had not done what was alleged. Complainant's mother, Bertha Kirchner, had custody of the child from March 1983, when she divorced the appellant, the natural father of the child. She testified that the child complained to her of the incident on the 19th of August, 1984, after appellant had left from exercising his visitation rights. The testimony of Dr. William P. Gross disclosed that he found no evidence the child was molested when he examined her about one week after the alleged incident. Thus, the testimony of Bertha Kirchner, as well as her influence on the child complainant became extremely critical. The ill-will evidence suggested too remote by the State led up to and surrounded the divorce of the parties in March 1983.

The issue then is the application of the sixth amendment of the Constitution of the United States which provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him;* to have compulsory process for obtaining witnesses in his favor and to have the

assistance of counsel for his defense. (Emphasis added).

U.S. Const.Amend. VI.

The Texas Court of Criminal Appeals has clearly indicated that the sixth amendment must be liberally construed in order that an accused receive all the protection intended by the Constitution. In *Evans v. State*, 519 S.W.2d 868 (Tex.Crim.App.1975), the court held it was reversible error to exclude evidence that the state's witness was under an indictment for sodomy at the time of trial. The Court reasoned that it would tend to establish bias motive on the part of a state's witness, and should have been admitted. In so holding, the court stated:

> The Court has frequently stated that *great latitude* should be allowed the accused in showing *any fact* which would tend to establish ill feeling, bias, motive and animus upon the part of any witness testifying against him. *See Seal v. State*, 496 S.W.2d 621 [Tex.Cr.App.1973]; *Hooper v. State*, 494 S.W.2d 846 [Tex.Cr. App.1973]; *Burkhalter v. State*, 493 S.W.2d 214 [Tex.Cr.App.1973]; *Wood v. State*, 486 S.W.2d 359 [Tex.Cr.App.1972]; *Jackson v. State*, 482 S.W.2d 864 [Tex. Cr.App.1972]; *Fletcher v. State*, 437 S.W.2d 849 [Tex.Cr.App.1968]; *Blake v. State*, 365 S.W.2d 795 [Tex.Cr.App.1963]. *See also, Mutscher v. State*, 514 S.W.2d 905 [Tex.Cr.App.1974]. (Emphasis added).

*Id.* at 871.

The accuracy and truthfulness of Knock's testimony was a key element in the State's case against appellants. The claim of bias, interest and motive which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Knock's vulnerable status as an indictee, as well as of Knock's possible concern that he might be a suspect in the offense. *Cf. Mutscher v. State, supra.*

We conclude that appellants were denied the right of effective cross-examination, which is 'constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Davis v. Alaska*, [415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)]; *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed. 2d 314 [1966].

*Id.* at 873.

In *Steve v. State*, 614 S.W.2d 137 (Tex. Crim.App.1981), the Court held that in a case of indecency with a child, it was reversible error to exclude evidence showing that a child abuse investigation was pending against the mother of the complaining child at the time the charge was made against the accused. In so holding the Court stated:

> The trial court sustained the state's objection that this evidence was irrelevant. *The motives which operate on the mind of a witness while he testifies should never be regarded as immaterial or irrelevant. McDonald v. State*, 77 Tex. Cr.Rep. 612, 179 S.W. 880 (1915). Great latitude should be allowed the accused in showing *any fact* which would tend to establish ill feeling, bias, motive, or animus upon the part of any witness testifying against him. *The jury should be given the opportunity to judge for themselves the witness's credibility in light of the witness's feelings toward the accused and his motive for testifying. Wood v. State*, 486 S.W.2d 359 (Tex.Cr.App.1972); *Coleman v. State*, 545 S.W.2d 831 (Tex.Cr.App.1977). (Emphasis added).

*Id.* at 140.

The State concedes that the basis for the Texas Court of Criminal Appeal's holdings is the decision of the Supreme Court of the United States in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the State contends *Davis* is not controlling because it is inapposite to the case before us. I disagree. The reasoning of the Supreme Court in *Davis* applies extraordinarily well to the facts in the case before us. In *Davis*, Richard Green was a crucial witness for the State in establishing the guilt of the accused. Prior to the trial, the trial court granted the State a motion for a protective order to prevent any reference to Green's juvenile record by the defense in cross-examination. The juvenile

offense had been committed over a year before the trial, but he was still on probation. The trial court granted the protective order, relying on Alaska Rule of Children's Procedure 23,[1] and Alaska Stat. § 47.10.080(g) (1971).[2] *Davis,* 415 U.S. at 311, 94 S.Ct. at 1107.

1. Rule 23 provides:
   "No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of a juvenile jurisdiction except for use in a presentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate." *Davis v. Alaska,* 415 U.S. at 311 n. 1, 94 S.Ct. at 1108 n. 1

2. Section 47.10.080(g) provides in pertinent part:
   "The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceedings in any other court...."
   *Davis v. Alaska,* 415 U.S. at 311 n. 2, 94 S.Ct. at 1108 n. 2.

3. In *Davis v. Alaska,* the Supreme Court stated:
   The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

   \*      \*      \*      \*      \*      \*

   ... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence § 940, p 775 (Chadbourn rev 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Green v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).[4]
   In the instant case, defense counsel sought to show the existence of possible bias and prejudice of Green, causing him to make a faulty initial identification of petitioner, which in turn could have effected his later in-court identification of petitioner.[5]

The Supreme Court of the United States held it was reversible error emphasizing the Sixth Amendment guarantees significant cross-examination rights which include exposure of a witness' motivation in testifying.[3]

We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof ... of petitioner's act.' *Douglas v. Alabama,* 380 U.S. at 419, 85 S.Ct., 1077, 13 L.Ed.2d 934. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner.

\*      \*      \*      \*      \*      \*

... In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

\*      \*      \*      \*      \*      \*

As in Alford, we conclude that the State's desire that Green fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the right of petitioner to seek out the truth in the process of defending himself.

4. In Greene we stated:
   'Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination....' 360 U.S. at 496, 79 S.Ct., at 1413, 3 L.Ed.2d 1377.

5. '[A] *partiality* of mind at some *former time* may be used as the basis of an argument to the same state at the time of testifying; though the ultimate object is to establish partiality at the time of testifying.' 3A J. Wigmore, Evidence,

In reversing, the Supreme Court stated:

*The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness.* The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records. The judgment affirming petitioner's convictions of burglary and grand larceny is reversed and the case is remanded for further proceedings not inconsistent with this opinion. (Emphasis added).

*Davis*, 415 U.S. at 321, 94 S.Ct. at 1112.

In the case before us, it is reasonable to assume that if the Supreme Court of the United States considered that "the right of confrontation [was] paramount to the State's policy of protecting a juvenile offender" it would likewise consider the right of confrontation of the appellant herein paramount to protecting Mrs. Kirchner. *Davis*, 415 U.S. at 319, 94 S.Ct. at 1111. The State's argument as to remoteness suffers considerably in face of the recognition by the Supreme Court that: "[A] *partiality* of mind at some *former time* may be used as a basis of an argument to the same state at the time of testifying." *Davis*, 415 U.S. at 317 n. 5, 94 S.Ct. at 1111 n. 5 (emphasis in original). The argument encounters further opposition from the Texas Court of Criminal Appeal when they proclaim that "[t]he motives which operate on the mind of a witness while he testifies should never be regarded as immaterial or irrelevant." *Steve v. State*, 614 S.W.2d at 140. The truthfulness of Mrs. Kirchner as well as the potential influence she had upon the child complainant were key elements of the State's case against appellant. Evidence of ill will, bias, motive, and animus of

Mrs. Kirschner towards the appellant was admissible to form a basis for an inference that such an attitude could have influenced both Mrs. Kirchner's testimony as well as the testimony of the child, who was in her custody and control. As recognized by the Supreme Court, there is no way of knowing what effect, if any, this would have on a jury, but the jury has the right to make that determination. *Davis*, 415 U.S. 308, 94 S.Ct. 1105. The evidence of Mrs. Kirchner's ill-feeling toward appellant during the period in question was relevant and admissible.

§ 940, p 776 (Chadbourn rev 1970). (Emphasis in original; footnotes omitted).

*Davis v. Alaska*, 415 U.S. 308, 315–321, 94 S.Ct. 1105, 1109–12, 39 L.Ed.2d 347 (1974).