IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-537-CR





ROBERT ALVAREZ, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0913827, HONORABLE BOB JONES, JUDGE PRESIDING



 




 After finding appellant guilty on three counts of injury to a child, Tex. Penal Code
Ann. § 22.04 (West Supp. 1994), the jury assessed punishment at confinement for life on each
count. Appellant asserts seven points of error, contending that: (1) the evidence is insufficient
to corroborate the testimony of the accomplice witness; (2) the trial court erred in denying
appellant's motion to quash; (3) and (4) the State failed to disclose evidence that was favorable
to the defense; (5) the trial court erred in refusing to admit certified copies of D.H.S. (Department
of Human Services) records; (6) Lara Gutierrez, aged eight, was not competent to testify; and (7)
the trial court erred in admitting an extraneous offense. We will overrule appellant's points of
error and affirm the judgment of the trial court.

 Appellant was the lessee of the apartment on Slaughter Lane in Travis County
where he lived with Maria Gutierrez and her two children, Ruben and Lara. It is undisputed that
Ruben sustained serious bodily injuries prior to the arrival of E.M.S. and Sheriff's Deputy
Manual Mancias at the apartment on September 21, 1989. Mancias stated that E.M.S. was
working with Ruben who was lying on the floor unconscious. Mancias observed that Ruben was
"real pale, bruises about his body, his toes [on his left foot] were black in color." Appellant told
Mancias that Ruben had fainted, and a short time later he wasn't breathing. Mancias saw Lara
on the floor in another room; she was "having a hard time breathing, was real pale and had dried
blood around her mouth." Both children were taken to the hospital, Ruben by Starflight and Lara
by E.M.S. Mancias suspected that both children had been abused, and after the arrival of other
officers, appellant and Maria were taken to the sheriff's office.

 Dr. George Edwards, a pediatric physician at Children's Hospital of Austin,
testified that his examination of Ruben revealed a severe head injury, ulcers on his buttocks,
bleeding in his eyes, bruises on his body, fractures in some of the bones of his feet, and injuries
to some of his toes that resulted in amputation. Dr. Edwards opined that the severe brain swelling
Ruben experienced was caused by a blow to the head that caused the head to strike against a hard,
rigid object. Dr. Edwards found that Ruben had a "remarkable elevation" of "urea" that was
likely caused by malnutrition. The injuries to Ruben's feet were consistent with "repeated striking
with a hard stick to the feet." Dr. Edwards stated that gangrene would not have likely resulted
if the injuries to the feet had been treated immediately after they occurred. The ulcers on Ruben's
buttocks were consistent with "repeated injury" that resulted in a "breakdown of the skin."

 In his first point of error, appellant contends that the evidence is insufficient to
corroborate the testimony of Maria as to counts one and three of the indictment. The first count
of the indictment charged appellant with causing serious bodily injury to Ruben by causing his
head to strike a wall. The third count charged appellant with causing serious bodily injury to
Ruben by omission to provide medical care after said child received injuries which required
medical care.

 A person is not an accomplice witness who cannot be prosecuted for the offense
for which the accused is charged. See Russell v. State, 598 S.W.2d 238, 249 (Tex. Crim. App.
1980), cert. denied, 449 U.S. 1003 (1980). To be criminally responsible for an offense
committed by another, a person must be "acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit
the offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 1974). A witness is not an accomplice
witness merely because he knew of the offense and did not disclose it. See Russell, 598 S.W.2d
at 249.

 "A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense committed." 
Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). In determining the sufficiency of the
evidence to corroborate the testimony of the accomplice witness, we eliminate from consideration
the accomplice witness' testimony and examine the remaining evidence to determine whether it
tends to connect the appellant to the offense. See Jackson v. State, 745 S.W.2d 4, 11 (Tex. Crim.
App. 1988), cert. denied, 487 U.S. 1241 (1988). The corroborative evidence may be
circumstantial or direct and it is not necessary that the corroboration directly link the accused to
the crime or be sufficient in itself to establish guilt. See Reed v. State, 744 S.W.2d 112, 126
(Tex. Crim. App. 1988).

 Maria entered a plea of guilty to injury of a child by omission and is therefore an
accomplice witness as to the third count of the indictment. The court instructed the jury that
Maria could be an accomplice witness as a matter of fact, but did not specify as to which count
the instruction applied. Maria testified to the following events concerning Ruben's head injuries. 
Maria saw appellant hitting Ruben with his hand, "on his face especially." When appellant was
hitting him, Ruben was unable to "stand up by himself," appellant was "holding him." Maria
described appellant's hitting as "very strong" causing the back of Ruben's head to hit the wall. 
When Maria picked Ruben up, he was "unconscious, and he was not answering me." Appellant
told Maria that Ruben "did not have anything, that he only had a seizure." Appellant's efforts to
revive Ruben by placing water on him and administering C.P.R. failed. After appellant called
for help, he told her to say that Ruben had a seizure as a result of heart problems and that "the
marks Ruben had were from the seizures he had before." Maria testified that she had earlier taken
responsibility for some of Ruben's injuries other than the injury to the head. At trial, Maria
recanted these earlier statements, stating that she had never hit Ruben, except for spanking his
bottom. Appellant told Maria that "I needed to say I was the one disciplining my children, not
him," and that "nothing was going to happen to me."

 Lara, age eight at the time of trial, testified that appellant spanked Ruben's toes
with a stick and hit Ruben in "the butt and in the back and in his face." She related that this
happened "every day." Lara stated that she had seen her mother hit Ruben with a sandal, a belt
and a hand, but never with a stick. Judy Gardner testified that she lived in the apartment directly
below the one occupied by appellant, Maria and the two children. Three or four days prior to the
occasion in question, Gardner heard a "lot of yelling and screaming." She was certain that she
heard an adult male voice and that the other voices were not those of adults. About 6:00 p.m. on
the evening in question, Gardner heard loud screaming and crying, banging on the floor, the wall. 
One sounded like a slap. The kids were crying and screaming. These noises were similar to the
ones that she had heard "off and on all the time." We find no evidence that Maria acted together
with appellant in causing serious bodily injury to Ruben as a result of causing his head to strike
a wall, and hold that Maria was not an accomplice witness as to the first count.

 Assuming, arguendo, that Maria was an accomplice witness, we find that there was
sufficient evidence, independent of Maria's testimony, tending to connect appellant to the offense
alleged in the first count. While presence at the scene of the crime at or about the time of its
commission is not enough, "when coupled with other suspicious circumstances, may tend to
connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." 
See Adams v. State, 685 S.W.2d 661, 668 (Tex. Crim. App. 1985). While Lara's testimony
relative to appellant's abuse of Ruben was not shown to have related to events occurring just prior
to the occasion in question, we hold that her testimony coupled with the testimony of Dr. Edwards
and Judy Gardner, and appellant's obviously false statement to officers about the cause of Ruben's
injuries, furnished "additional suspicious circumstances" that sufficiently corroborated Maria's
testimony.

 In his first point of error, appellant also challenges the sufficiency of the evidence
to corroborate the testimony of Maria as to the third count of the indictment charging appellant
with causing serious bodily injury by omission. Appellant does not discuss any facts or cite any
authority to sustain his contention. See Tex. R. App. P. 74(f). Appellant has presented nothing
for review. See Foster v. State, 779 S.W.2d 845, 864 (Tex. Crim. App. 1989), cert. denied, 110
S. Ct. 1505 (1990). Moreover, our review of the evidence reflects that appellant, an X-Ray
technician, knew of Ruben's injuries and failed to provide the proper medical care required of one
who has assumed the care, custody and control of a child. Appellant's first point of error is
overruled.

 In his second point of error, appellant contends that the trial court erred in denying
his motion to quash the indictment because the averment of "care, custody and control" in the
third count of the indictment is vague and indefinite. Appellant urges that the indictment alleged
no specific act, words, or course of conduct upon which the State relied to prove this averment. 
One of the elements of "omission" under the injury to a child statute is that the "actor has assumed
care, custody or control of a child." Section 22.04(b). In alleging all the essential elements of
an offense, an indictment drafted in the language of the statute creating and defining an offense
is ordinarily sufficient. See Daniels v. State, 754 S.W.2d 214, 218 (Tex. Crim. App. 1988). We
perceive no exception to the general rule in the instant cause. Appellant's second point of error
is overruled.

 Appellant combines points of error three and four for discussion. In these points
of error, appellant asserts that the State failed to disclose evidence that was favorable to the
defense that denied appellant due process of law under the United States Constitution and the
Constitution of Texas. The prosecutor's suppression of evidence favorable to a criminal defendant
violates due process when the defendant requests the evidence and such evidence is material either
to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution. Brady
v. Maryland, 373 U.S. 83 (1963).

 It is undisputed that appellant made a timely request for the State to disclose D.H.S.
(Department of Human Services) reports that indicated Maria was the person who had injured
Ruben. The prosecutor made available to appellant all D.H.S. documents in the State's file. 
However, appellant faults the prosecutor for not personally reviewing D.H.S. files that were
reasonably available to the State rather than assign the task to a non-lawyer. Appellant urges that
the prosecution was charged with imputed knowledge of all exculpatory evidence in the D.H.S.
files. Appellant states he obtained the D.H.S. documents, containing statements that Maria was
responsible for Ruben's injuries, "only days before the trial." The thrust of appellant's argument
is that defense counsel did not have time to determine the source of the information upon which
D.H.S. based its conclusions in these documents.

 A hearing was held outside the presence of the jury on appellant's Brady motion
on the admissibility of the documents. Two of the three documents, a letter and a form, were
signed by Susan Hollan, a regional attorney with D.H.S. Both documents contain statements that
Ruben was "critically injured by mother" who is "in jail awaiting trial." Hollan testified that the
letter and the form were executed for the sole purpose of qualifying Ruben for Medicaid in order
that his hospital and medical bills could be paid. Hollan stated she made no investigation to
determine who was responsible for Ruben's injuries and the opinion about guilt for the injuries
was based on her reading of the department's records in the case. Hollan testified as to the names
of all department personnel to whom she had talked about Ruben's injuries.

 The third document reflected the findings from a hearing conducted by D.H.S. The
findings in the history portion of the document show that Ruben's injuries resulted from beatings
by his mother "who is currently in jail." Glenn Williams, assistant regional attorney for D.H.S.,
testified that the hearing was conducted to determine the eligibility of Ruben for Medicaid
coverage. Williams stated that this was the only issue to be determined at the hearing and that
responsibility for Ruben's injuries was not a matter for D.H.S. to determine, nor did it have any
relevancy on eligibility on the Medicaid issue. Kristina Jarrot, the hearing officer who wrote the
findings, testified that she had no evidence to support the statement that the mother was
responsible for the injuries. It was an "unsubstantiated rumor" and it "should not have been put
in there"; the "history section was simply a description based on rumors, based on probably what
I had seen in the newspaper." Jarrot related that all the information elicited at the hearing
pertained to eligibility for Medicaid, which "revolved around items like his [Ruben's] status as
a citizen, his financial status."

 Following the testimony of the D.H.S. witnesses, defense counsel stated that the
only other witness he wanted was John Patlan, an investigator for D.H.S. who was no longer with
the department. However, defense counsel told the court that "I don't think I'd get anywhere by
bringing him over here." The court advised defense counsel that if he would get a subpoena,
"We'll get him down here," but it appears that appellant took no further action.

 There must be suppression of material evidence requested by a defendant before
a criminal prosecution will be reversed on appeal. Hawkins v. State, 660 S.W.2d 65, 76 (Tex.
Crim. App. 1983). Appellant had access to the records of D.H.S. before the trial started and
obtained the documents in question. Defense counsel elicited testimony from all persons who had
prepared the documents at the Brady hearing. All of the D.H.S. witnesses testified that the sole
purpose of that department's investigation was to determine whether the victim was eligible for
Medicaid, and that the determination of who caused the victim's injuries was not relevant to any
issue the department had to resolve. Given the fact that the reports were made before Maria had
recanted her statements accepting responsibility for Ruben's injuries, D.H.S. personnel had a
reasonable basis for stating that Maria was responsible for the injuries. There is no showing that
appellant took any action to subpoena the only other person who defense counsel stated might be
a witness on his Brady motion.

 The trial court's findings reflect that the D.H.S. documents alleged to have been
suppressed were not admissible, stating that "they're not relevant; they're not material; they're
all based upon testimony of the witnesses you [defense counsel] called on this; they have no
personal knowledge; they had no basis to make these conclusions; they're double hearsay; and
they are not admissions of a party opponent." We hold that the record fails to support appellant's
contention that the State suppressed material evidence that would tend to undermine confidence
in the verdict. In holding that the alleged suppressed documents were not material, we have
considered their effect as direct evidence, impeachment evidence, and how the lack of earlier
receipt of the documents may have adversely affected the preparation and presentation of
appellant's case. See Thomas v. State, 841 S.W.2d 399, 406 (Tex. Crim. App. 1992). 
Appellant's third and fourth points of error are overruled.

 In his fifth point of error, appellant contends the trial court erred in refusing to
admit certified copied of D.H.S. records because they were public records, and contradicted the
State's claim that appellant committed the offense. Appellant urges that the records were
admissible under Texas Rules of Criminal Evidence 803(8) as an exception to the hearsay rule. 
Rule 803(8) provides that the following are not excluded by the hearsay rule, even though the
declarant is available as a witness:



Records, reports, statements, or data compilations, in any form, of public offices
or agencies setting forth (A) the activities of the office or agency, or (B) matters
observed pursuant to duty imposed by law as to which matters there was a duty to
report, excluding, however, matters observed by police officers and other law
enforcement personnel, or (C) against the state, factual findings resulting from an
investigation made pursuant to authority granted by law; unless the sources of
information or other circumstances indicate lack of trustworthiness.



The findings made following a hearing conducted by D.H.S. reviewed in appellant's points of
error three and four were authenticated as a record kept in the regular course of business by
D.H.S. Appellant urges that no further foundation is required for the admission of the document.

 In Cowan v. State, 840 S.W.2d 435 (Tex. Crim. App. 1992), cited by appellant,
the court held that a certified copy of the Marine Corps Medical Board's report, containing
findings as to defendant's mental condition sixty days before the offense, was admissible under
Rule 803(8)(C). The court found that there was sufficient documentary evidence to show that the
findings were made "pursuant to authority granted by law, as part of what appear to be internal
procedures established to evaluate and deal with a mentally ill service member." Id. at 438. 
Unlike Cowan, the evidence in the instant case affirmatively negates the authority of D.H.S. to
determine who was responsible for the victim's injuries. Appellant contends the heading at the
top of the document, "Official Record of Fair Hearing," suggests that the findings fall within
normal procedures conducted by D.H.S. The "Identification" that follows the heading shows the
"program" for the hearing as "Med. Elig." Moreover, the trial court's findings excluding the
document support the conclusion that the "sources of information or other circumstances indicate
lack of trustworthiness." See Rule 803(8)(C). Appellant's fifth point of error is overruled.

 In his sixth point of error, appellant asserts that Lara was not competent to testify
because she did not possess the ability to understand and narrate the events to which she testified. 
Appellant points to instances where the witness appeared to be confused and unable to understand
the questions even though the court allowed the prosecutor leeway in asking leading questions. 
Children who, after being examined by the court, appear not to possess sufficient intellect to relate
transactions with respect to which they are interrogated shall be incompetent to testify. See Tex.
R. Crim. Evid. 601(a)(2).

 By her answers to questions designed to test her competency, Lara demonstrated
that she knew the difference between the truth and a lie. Though some of a child's answers are
conflicting and show confusion, the child's competency is a question for the trial court, and the
court's decision will not be disturbed on appeal in the absence of an abuse of discretion. See
Kirchner v. State, 739 S.W.2d 85, 88 (Tex. App.--San Antonio 1987, no pet.). The witness in
the instant cause stated that she was afraid to testify, a reaction we find understandable in the
context of the traumatic events that transpired in the child's home. While a review of Lara's
testimony reflects some confusion in understanding questions and relating events, we hold that the
trial court did not abuse its discretion in allowing the witness to testify. Appellant's sixth point
of error is overruled.

 In his seventh point of error, appellant contends that the trial court erred in
allowing Maria to testify about an extraneous offense in violation of appellant's motion in limine. 
Appellant calls our attention to the fact that the court's order granting his motion in limine
prohibited any mention of his causing bodily injury to Lara by striking her with his hand and with
a stick. In response to the prosecutor's question as to what she saw appellant do with a stick,
Maria answered, "I saw him using it on Ruben and even Lara." Appellant notes that Officer
Mancias had observed Lara lying on the floor with dried blood around her mouth. Appellant
reasons that the implication of Maria's testimony was that appellant also hit Lara in a manner
similar to the way he hit Ruben.

 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show that he acted in conformity therewith." Tex. R. Crim. Evid. 404(b). 
The trial court instructed the jury to disregard the statement that the witness made about Lara, but
denied appellant's motion for a mistrial. Harm caused by an improper remark can generally be
cured by an appropriate instruction to disregard, unless the remark is so inflammatory that its
prejudicial effect cannot be effectively removed. Caldwell v. State, 818 S.W.2d 790, 801 (Tex.
Crim. App. 1991), cert. denied, 112 S. Ct. 1684 (1992). Assuming, arguendo, that the trial
court's instruction did not cure the harm, we find that additional unobjected to testimony by Maria
relative to appellant's treatment of Lara rendered Maria's testimony harmless. Maria later
testified, without objection, that appellant told her that "if I wanted to see Lara again -- I didn't
want nothing worse to happen to my childrens [sic], that I should not say to anybody that he
[appellant] was using [sic] to beat my children -- he was hitting my children." Maria further
testified without objection that appellant told her, "I needed to say I was disciplining my children
because Lara was all with bruises." Error in allowing inadmissible evidence is cured when the
same evidence comes in without objection elsewhere in the trial. Johnson v. State, 803 S.W.2d
272, 291 (Tex. Crim. App. 1990), cert. denied, 111 S. Ct. 2914 (1991). Appellant's seventh
point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Chief Justice Carroll, Justices B. A. Smith and Davis*

Affirmed

Filed: April 13, 1994

Do Not Publish

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).